**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DENNIS ROBINSON; SPENCER
ROBINSON, JR.; RICKIE ROBINSON;
CYNTHIA ROBINSON; VICKIE
ROBINSON,
             *Plaintiffs-Appellants,*

             v.

UNITED STATES OF AMERICA, as
Trustee for the Indians of the
Mooretown Rancheria a.k.a.
Maidu Indians of California;
DEPARTMENT OF INTERIOR, Bureau
of Indian Affairs,
             *Defendants-Appellees.*

No. 07-17052

D.C. No.
CV-04-00734-
RRB/KJM

OPINION

Appeal from the United States District Court
for the Eastern District of California
Ralph R. Beistline, District Judge, Presiding

Argued and Submitted
April 17, 2009—San Francisco, California

Filed November 2, 2009

Before: Dorothy W. Nelson, Marsha S. Berzon, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge D W. Nelson

14783

## COUNSEL

Joseph P. Mascovich, Randolph Cregger & Chalfant LLP, Sacramento, California, for appellants Dennis Robinson, Spencer Robinson, Jr., Rickie Robinson, Cynthia Robinson, and Vickie Robinson.

Tamara N. Rountree, Environment & Natural Resources Division, United States Department of Justice, Washington, D.C., for appellee United States.

## OPINION

D. W. NELSON, Senior Circuit Judge:

The Robinsons appeal the dismissal of their complaint for lack of subject matter jurisdiction due to the sovereignty of the United States government under the Quiet Title Act. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we vacate the district court's order. We remand so that the district court may determine whether appellants may assert jurisdiction under the Federal Tort Claims Act.

*FACTUAL AND PROCEDURAL HISTORY*

In the mid-1970s, Clinton and Lorene Miller and Spencer and Alverda Robinson purchased approximately 620 acres of land in Butte County, California. In 1978, a twenty-foot wide road, known as Alverda Drive, was built across Parcels 2, 3, and 4 of the lot. Alverda Drive connects several of the other parcels with local roads.

In 1979, the Robinsons and the Millers entered into a Road Maintenance Agreement (the "RMA") whereby they both agreed to bear the cost of maintaining "the roadways and drainage facilities." In 1980, the Millers gifted a portion of their land, as well as a sixty-foot "non-exclusive right of way for road and public utilities" over Parcels 2 through 4, to the Robinson family. The RMA was duly recorded.

Through a series of transactions, Parcels 2 through 4 were conveyed to the Indians of the Mooretown Rancheria, also known as the Maidu Indians of California (the "Maidu" or the "Tribe"). All of the grants noted the "60.00 foot right of way for road and public utility purposes" (the "easement"). The Maidu subsequently conveyed the parcels, subject to the easement, to the United States to hold in trust for the Tribe.

In the 1990s, the Maidu constructed homes and a casino on Parcel 4. In 2004, Dennis, Spencer, Rickie, Cynthia, and Vickie Robinson filed suit in the Eastern District of California alleging*, inter alia*, that an unshored slope caused subsidence and that a curb, concrete walkway, wrought iron fence, and fire hydrant encroached onto the easement. The complaint alleged disruption of lateral and subjacent support, negligence, and nuisance.

Although the Government did not dispute the existence of the easement, it filed a motion to dismiss arguing, *inter alia*, that the court lacked subject matter jurisdiction over the claim due to sovereign immunity. The district court agreed and dis-

missed the case for lack of subject matter jurisdiction. The Robinsons then timely appealed to this court.

## STANDARD OF REVIEW

"Unless the jurisdictional issue is inextricable from the merits of a case, the court may determine jurisdiction on a motion to dismiss for lack of jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure." *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008). A district court may "hear evidence regarding jurisdiction" and "resolv[e] factual disputes where necessary." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). "[N]o presumptive truthfulness attaches to plaintiff's allegations." *Id.* (internal quotation marks omitted). "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." *Rattlesnake Coal. v. E.P.A.*, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007).

"Subject matter jurisdiction determinations are subject to de novo review." *State of Alaska v. Babbitt*, 38 F.3d 1068, 1072 (9th Cir. 1994) ("*Albert*"). "A district court's findings of fact relevant to its determination of subject matter jurisdiction are reviewed for clear error." *Kingman*, 541 F.3d at 1195.

## DISCUSSION

Federal sovereign immunity insulates the United States from suit "in the absence of an express waiver of this immunity by Congress." *Block v. North Dakota*, 461 U.S. 273, 280 (1983).

**[1]** The Government argues that the Robinsons' suit falls within the purview of the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a, which waives the Government's immunity in actions to quiet title. The QTA's waiver of sovereign immunity, however, "does not apply to trust or restricted Indian lands." *Id.*

§ 2409a(a).[1] When the United States "has a colorable claim" that it holds the land in trust for an Indian tribe, courts do not have jurisdiction over a quiet title claim otherwise within the scope of the QTA. *State of Alaska v. Babbitt*, 182 F.3d 672, 675 (9th Cir. 1999) ("*Bryant*"); *Albert*, 38 F.3d at 1072-73; *Wildman v. United States*, 827 F.2d 1306, 1309 (9th Cir. 1987). There is no dispute that the Government holds the land in trust for the Maidu. Thus, if the Robinsons' suit falls within the substantive scope of the QTA, their claims must fail for lack of subject matter jurisdiction because the QTA "provide[s] the *exclusive* means by which adverse claimants [can] challenge the United States' title to real property." *Block*, 461 U.S. at 286 (emphasis added); *cf. Bryant*, 182 F.3d at 674 (noting that plaintiffs could not avoid the Indian lands exception of the QTA by claiming jurisdiction under the Administrative Procedure Act).

[2] The Robinsons argue that the QTA does not apply to their suit because theirs is not an action to quiet title; rather, they allege tort claims that fall within the purview of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2674. Under the FTCA, there is no "Indian lands" exception. *See id.* Thus, if the QTA would not substantively apply but for the Indian Lands Exception, remand would be appropriate to determine whether jurisdiction over their suit lies under the FTCA.

Under the QTA,

> The United States may be named as a party defendant in a civil action under this section *to adjudicate a disputed title to real property* in which the United States claims an interest, other than a security interest or water rights.

---

[1]Because the statute and cases frequently refer to Native American tribes as "Indians," we likewise use this terminology.

28 U.S.C. § 2409a(a) (emphasis added).

For a court to exercise jurisdiction under the QTA, "(1) the United States must claim an interest in the property at issue, and (2) there must be a disputed title to real property." *Leisnoi, Inc. v. United States*, 170 F.3d 1188, 1191 (9th Cir. 1999). Only the second requirement is at issue in this appeal.

**[3]** This court has repeatedly held that both disputes over the right to an easement and suits seeking a declaration as to the scope of an easement fall within the purview of the QTA. *See, e.g.*, *Skranak v. Castenada*, 425 F.3d 1213, 1218 (9th Cir. 2005) (dispute over plaintiff's right to an easement over national forest); *McFarland v. Norton*, 425 F.3d 724, 726-27 (9th Cir. 2005) (dispute over plaintiff's right to access a route through a national park); *Michel v. United States*, 65 F.3d 130, 131-33 (9th Cir. 1995) (per curiam) (dispute regarding the scope of easement over national wildlife refuge); *Shultz v. Dep't of Army*, 886 F.2d 1157, 1159-61 (9th Cir. 1989) (dispute arising because the army erected a fence and gate preventing public access to road even though federal land acquisition was "made 'subject to valid existing rights' "); *Narramore v. United States*, 852 F.2d 485, 490-92 (9th Cir. 1988) (dispute over whether flooding exceeded the scope of an easement).

**[4]** The Robinsons argue that unlike the plaintiffs described above, they do not seek a declaration either establishing their right to the easement or determining its scope; rather, they seek relief in tort. That is so. However, although the Robinsons' complaint does not seek a declaration of title as a remedy, resolution of their tort claims may require the court to consider the terms of the easement. Whether such a suit falls within the scope of the QTA is a question of first impression.

We look to the QTA to outline the boundaries of the United States' consent to suit and rely upon our familiar principles of statutory construction. "The purpose of statutory construction

is to discern the intent of Congress in enacting a particular statute." *United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir. 1999). "The first step in ascertaining congressional intent is to look to the plain language of the statute." *Id.* "The plain meaning of the statute controls, and courts will look no further, unless its application leads to unreasonable or impracticable results." *Id.* "[I]n ascertaining the plain meaning of the statute, the court must [also] look to . . . the language and design of the statute as a whole." *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006) (internal quotation marks and alterations omitted). Finally, "[i]f the statute is ambiguous . . . [,] courts may look to its legislative history for evidence of congressional intent." *Daas*, 198 F.3d at 1174.

**[5]** We therefore first turn to the text of the statute and the phrase "adjudicate a disputed title." The word "adjudicate" is defined as, *inter alia*, (1) "to settle finally (the rights and duties of the parties to a court case) on the merits of issues raised"; or (2) "to pass judgment on." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 27 (1968); *see Johnson v. Aljian*, 490 F.3d 778, 780 (9th Cir. 2007) (following "the common practice of consulting dictionary definitions to clarify the[ ] ordinary meaning" of statutory language) (internal quotation marks omitted). "Adjudicate" is thus ambiguous in this context. Although it certainly refers to the ultimate remedy, it could also include the legal findings upon which the ultimate determination rests.

**[6]** On the one hand, the statute is entitled the "Quiet Title Act," *see* 28 U.S.C. § 2409a, which would indicate that the act only applies to traditional "quiet title" actions. The legislative history, however, indicates that Congress did not intend to limit the waiver solely to the traditional "quiet title" cause of action; instead Congress was more generally concerned with interests that "cloud title," i.e., interests that raise questions that may *affect* the claim of title and pose problems in the future. In the accompanying House Report, Congress noted:

> The history of this type of action goes back to the Courts of England. Suits to quiet title or to remove a cloud on title originated in the equity court of England. They were in the nature of bills quia timet, which allowed the plaintiff to institute suits when an action would not lie in a court of law.[2] For instance, a plaintiff whose title to land was continually being subjected to litigation in the law courts could bring a suit to quiet title in a court of equity in order to obtain an adjudication on title and relief against further suits. Similarly, one who feared that an outstanding deed or other interest might cause a claim to be presented in the future could maintain a suit to remove a cloud on title. . . . This, of course, is merely included to show the history of this type of action.
>
> . . .
>
> Perhaps the most common application of the proposed statute would be in boundary disputes between the United States and owners of adjacent property.

H.R. Rep. No. 92-1559, at 5-6 (1972), *as reprinted in* 1972 U.S.C.C.A.N. 4547, 4551-52.

**[7]** In interpreting 28 U.S.C. § 2410, an analogous statute which permits the United States to be a party in an action to "quiet title" to properties in which the United States has a lien, this circuit has noted that the phrase "comprehends a suit to remove a cloud upon the title of a plaintiff." *United States v. Coson*, 286 F.2d 453, 457 (9th Cir. 1961); *see also United*

---

[2]A "bill quia timet" was the "equitable bill used to guard against possible or prospective injuries." BLACK'S LAW DICTIONARY 156 (7th ed. 1999). "Quia timet is the right to be protected against anticipated future injury that cannot be prevented by the present action." *Id.* at 1260 (quoting 27A Am. Jur. 2d EQUITY § 93, at 581 (1996)).

*States v. Bedford Assocs.*, 657 F.2d 1300, 1316 (2d Cir. 1981) (finding that § 2409a "plainly permits a variety of suits besides the typical quiet title action, in which adverse claimants to real property seek an adjudication of title as between themselves"); *Prater v. United States*, 612 F.2d 157, 159 (5th Cir. 1980) (same). Indeed, courts have impliedly held that the QTA was the exclusive remedy for suits that were not traditional "quiet title" suits but the remedy sought pragmatically involved some type of declaration as to the ownership rights of the parties. *See, e.g.*, *Metro. Water Dist. of S. Cal. v. United States*, 830 F.2d 139, 143 (9th Cir. 1987) ("Although MWD may not be seeking to quiet title to the land in itself, . . . [t]he effect of a successful challenge would be to quiet title in others than the Tribe."); *Bedford*, 657 F.2d at 1316 (permitting a mortgage foreclosure action against a property in which the United States had a leasehold interest because resolution of the claim clarified the respective rights of all the parties in the property); *Prater*, 612 F.2d at 159 (concluding that an alleged interest in equitable title was sufficient to sustain a claim under the QTA); *cf. County of Patrick, Va. v. United States*, 596 F.2d 1186 (4th Cir. 1979) (resolving a claim for interference with an easement under the Quiet Title Act without directly addressing jurisdiction). Where, on the other hand, there was no real dispute as to an ownership interest, courts have held that the QTA does not apply to a related tort claim. *See Dunbar Corp. v. Lindsey*, 905 F.2d 754, 759 (4th Cir. 1990) (permitting an action for trespass where the plaintiff did not assert an ownership interest in his complaint).

[8] We adopt a pragmatic approach and conclude that a suit that actually challenges the federal government's title, however denominated, falls within the scope of the QTA regardless of the remedy sought. To hold otherwise would merely allow parties to avoid the limitations of the QTA by raising contract or tort claims. At the same time, a suit that does not challenge title but instead concerns the use of land as to which title is not disputed can sound in tort or contract and not come within the scope of the QTA.

**[9]** We turn now to the facts of this case. There is no dispute that the trust property was subject to a sixty-foot easement for specified purposes. The parties agree to that much. Although the Government suggests, vaguely, that it does dispute the easement, a close reading of its brief indicates that it maintains only that the Indians' use of the land has not interfered with the easement, but does not disagree with the Robinsons about the land area or the intended use of the easement. The litigation therefore should not result in any adjudication of title to the easement claimed by the Robinsons, and the Robinsons' suit properly sounds in tort, as alleged.

**[10]** Because, pragmatically, the effect of this suit as pleaded is not to challenge the federal government's title, the QTA does not apply to the Robinsons' suit[3]. Accordingly, we vacate the lower court's order and remand so that the district court may consider whether jurisdiction over this claim lies under the FTCA.

## *CONCLUSION*

For the foregoing reasons, we VACATE the district court's order and REMAND for further proceedings.

**VACATED; REMANDED**.

---

[3]If a dispute over title does arise as this litigation develops, the district court must then decline jurisdiction over that dispute.