**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| RAHNE PISTOR; GEORGE ABEL; JACOB WHITHERSPOON, *Plaintiffs-Appellees*, <br><br> v. <br><br> CARLOS GARCIA; FARRELL HOOSAVA; LISA KAISER, *Defendants-Appellants*, <br><br> and <br><br> REYNOLDS NEJO; TERRY PHILLIPS; TONY MCDANIEL; ARIZONA DEPARTMENT OF GAMING; GILA COUNTY; GILA COUNTY SHERIFF'S DEPARTMENT; TRAVIS BAXLEY, Sgt.; DENNIS NEWMAN, Deputy, *Defendants*. | No. 12-17095 <br><br> D.C. No. 2:12-cv-00786-FJM <br><br><br> OPINION |

Appeal from the United States District Court
for the District of Arizona
Frederick J. Martone, Senior District Judge, Presiding

Argued and Submitted
November 20, 2014—San Francisco, California

Filed June 30, 2015

Before: Marsha S. Berzon and Johnnie B. Rawlinson,
Circuit Judges, and Elaine E. Bucklo, Senior District
Judge.[*]

Opinion by Judge Berzon

---

## SUMMARY[**]

---

### Civil Rights

The panel affirmed the district court's denial of a motion
to dismiss an action brought against tribal officers who were
sued in their individual capacities for an assertedly
unconstitutional detention and seizure of property that took
place at a casino owned and operated by a tribe on tribal land.
The district court held that even if the tribal defendants were
entitled to tribal immunity, it was inappropriate to dismiss the
claims against the defendants for lack of subject matter
jurisdiction. The district court went on to hold, however, that
if the tribal defendants' Fed. R. Civ. P. 12(b)(1) motion to
dismiss was construed as a Rule 12(b)(6) motion to dismiss,
the court would conclude that plaintiffs had sufficiently stated
a 42 U.S.C. § 1983 claim against the tribal defendants in their
individual capacities. The district court therefore denied
defendants' motion to dismiss the action.

---

[*] The Honorable Elaine E. Bucklo, Senior District Judge for the U.S.
District Court for the Northern District of Illinois, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

The panel held that sovereign immunity is a quasi-jurisdictional issue that, if invoked at the Rule 12(b)(1) stage, must be addressed and decided. Accordingly, the panel held that the district court erred in concluding that it would be inappropriate to dismiss the claims against the defendants at the 12(b)(1) stage. The panel nevertheless affirmed the district court's denial of defendants' motion to dismiss the action. The panel held that the tribal defendants were not entitled to tribal sovereign immunity because they were sued in their individual rather than their official capacities, as any recovery will run against the individual tribal defendants, rather than the tribe.

The panel held that it did not have jurisdiction to decide whether plaintiffs successfully stated a claim against the defendants under § 1983. The panel held that whether the tribal defendants were acting under state or tribal law did not matter for purposes of the tribal sovereign immunity analysis, although it will matter for purposes of deciding whether plaintiffs can succeed in their § 1983 claim.

---

**COUNSEL**

Glenn M. Feldman (argued) and D. Samuel Coffman, Dickinson Wright/Mariscal Weeks, Phoenix, Arizona, for Defendants-Appellants.

Robert A. Nersesian (argued) and Thea M. Sankiewicz, Nersesian & Sankiewicz, Las Vegas, Nevada, for Plaintiffs-Appellees.

## OPINION

BERZON, Circuit Judge:

Our question is whether tribal officers may assert tribal sovereign immunity when sued in their individual capacities for an assertedly unconstitutional detention and seizure of property. The seizure and detention at issue took place at a casino owned and operated by a tribe on tribal land.

We conclude that the tribal defendants are not entitled to sovereign immunity because they were sued in their individual rather than their official capacities, as any recovery will run against the individual tribal defendants, rather than the tribe. *Maxwell v. County of San Diego*, 708 F.3d 1075, 1089 (9th Cir. 2013), makes our determination pretty much foreordained. But the position of the litigants in this case, and the reluctance of the district court to decide the issue on the pleadings, suggest continuing confusion regarding the application of *Maxwell*, and also regarding the intersection of tribal sovereign immunity doctrine with § 1983 principles in tort actions brought against tribal officials. We therefore further clarify our previous rulings on these issues.

## I.

Plaintiffs Rahne Pistor, George Abel, and Jacob Whitherspoon ("the gamblers") are "advantage gamblers" who "use[] legal techniques . . . to win at casino . . . games." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1131 (9th Cir. 2012). They achieve this success by "limit[ing] their play to games with a statistical advantage favoring the player." (Most casino games favor the house.) Applying advantage gambling techniques, the gamblers won a significant amount

of money on video blackjack machines at the Mazatzal Hotel and Casino ("Mazatzal") in Payson, Arizona. Mazatzal is owned and operated by the Tonto Apache Tribe ("the Tribe") on tribal land.

In their original complaint, the gamblers alleged the following: on October 25, 2011, Carlos Garcia, a Chief of the Tonto Apache Police Department, Farrell Hoosava, the General Manager of Mazatzal, and Lisa Kaiser, a Tribal Gaming Office Inspector, ("the tribal defendants") took them from the gambling floor. The gamblers were then handcuffed and led to interrogation rooms inside Mazatzal, where they were questioned. While they were detained, the tribal defendants took significant sums of cash and other personal property from them, none of which has been returned. Before the day of the seizure, "[t]he Gila County Sheriff's Office . . . , the Arizona Department of Gaming . . . , [and the tribal defendants] met or discussed the seizure of the plaintiffs." This scheme was concocted "with the goal of punishing plaintiffs for winning so much at . . . Mazatzal, and the hope of stealing back some of the funds that the plaintiffs had legitimately won." All of these actions were taken "under color of state law," "in concert with the state defendants" from the Gila County Sheriff's Office and Arizona Department of Gaming. The gamblers sought damages from the tribal defendants (and also from non-tribal defendants) under 42 U.S.C. § 1983 for violations of their Fourth and Fourteenth Amendment rights, and under state tort law for battery, false imprisonment, conversion, defamation, trespass to chattels, and negligence.

The tribal defendants moved the district court for an order "dismissing all claims against them pursuant to Rule[] 12(b)(1)." They asserted that the district court "lack[ed]

jurisdiction over the subject matter of the claims asserted against the Tribal Defendants . . . based on well-recognized principles of tribal sovereign immunity." Because "[e]ach of the Tribal Defendants is an employee of the Tonto Apache Tribe or the Tribe's wholly-owned gaming facility, . . . Mazatzal," the tribal defendants maintained, they possessed "the same sovereign immunity as the Tribe itself, which bars unconsented suits against these defendants." In support of their motion to dismiss, each of the tribal defendants averred that he or she was "employed by the Tonto Apache Tribe,"[1] and that all the actions he or she took during the gamblers' seizure and detention were done "in furtherance of . . . official duties" and within the scope of official authority.

The tribal defendants also submitted a declaration by Hubert Nanty, Executive Director of the Tonto Apache Tribal Gaming Office, attaching a copy of the Tribe's official Tribal Gaming Ordinance. Nanty's declaration explained that the Ordinance, approved by the National Indian Gaming Commission under the Indian Gaming Regulatory Act of 1988, 25 U.S.C. § 2701 *et seq.*, confers regulatory authority on the Tribal Gaming Commission, a five-member body appointed by the Tribal Council to direct the activities of the Tribal Gaming Office. The Commission, Nanty explained, is empowered by the Tribal Gaming Ordinance to, among other things, "[i]nvestigate any suspicion of wrongdoing associated with any gaming activities," "detain persons who may be involved in illegal acts in or around the gaming facility for the purpose of notifying appropriate law enforcement authorities," and "[p]rovide referrals and information to the

---

[1] Garcia stated that he was the Chief of the Tonto Apache Police Department; Kaiser stated that she was a Tribal Gaming Office Inspector; and Hoosava stated that he was the General Manager of Mazatzal.

appropriate law enforcement officials when such information indicates a violation of Tribal, Federal, or State [law]." "All of the actions that Carlos Garcia, Farrell Hoosava and Lisa Kaiser took with respect to the plaintiffs on October 25, 2011[,] were done solely in their capacities as tribal officials . . . [and solely] within the scope of their authorities under the Tonto Apache Tribal Gaming Ordinance," not under any state authority, Nanty asserted. The tribal defendants also included a supplemental declaration by Garcia, which asserted that his investigation of the gamblers was ordered by Nanty.

The gamblers opposed the tribal defendants' motion, repeating their allegations of conspiracy between the tribal defendants and state defendants to seize the gamblers and steal their property.

The district court denied the defendants' motion to dismiss. It reasoned that "[e]ven if [the tribal defendants] are entitled to tribal immunity from suit . . . it would be inappropriate . . . to dismiss the claims against them for lack of [subject matter] jurisdiction," because the district court has "power generally to hear these kinds of claims," i.e., those relying on 28 U.S.C. § 1331 and § 1367 for jurisdiction. Tribal sovereign immunity is essentially "the assertion of an affirmative defense," the court maintained, and so is a "separate question" from whether the court "ha[s] the power to hear a kind of claim."

The district court went on to hold, in the alternative, that if the tribal defendants' motion were construed as a Rule 12(b)(6) motion to dismiss, "[t]aking the[] [gamblers'] allegations as true," as required under that Rule, the court "would conclude that the plaintiffs have sufficiently stated a § 1983 claim against [the tribal defendants] in their individual

capacities." This was so, the court's order on the dismissal motion stated, because the tribal "[d]efendants are not entitled to tribal immunity . . . if they are sued under § 1983 in their *individual* capacities for actions that they took under color of state law," rather than in their official capacities.

## II.

"Tribal sovereign immunity protects Indian tribes from suit absent express authorization by Congress or clear waiver by the tribe." *Cook v. AVI Casino Enterprises, Inc.*, 548 F.3d 718, 725 (9th Cir. 2008). Tribal sovereign immunity "also protects tribal employees in certain circumstances," *Maxwell*, 708 F.3d at 1086, namely, where a tribe's officials are sued in their official capacities. "A suit against . . . [a tribe's] officials in their official capacities is a suit against the tribe [that] is barred by tribal sovereign immunity." *Miller v. Wright*, 705 F.3d 919, 927–28 (9th Cir. 2013), *cert. denied*, 133 S. Ct. 2829 (2013) (internal quotation marks omitted).

## A.

"Issues of tribal sovereign immunity are reviewed de novo." *Burlington N. & Santa Fe Ry. v. Vaughn*, 509 F.3d 1085, 1091 (9th Cir. 2007). Although generally "[a] district court's denial of a motion to dismiss is not a final decision within the meaning of 28 U.S.C. § 1291, . . . an adverse decision . . . denying tribal sovereign immunity as a complete defense to proceeding with the litigation" is considered a final decision for purposes of § 1291 appellate jurisdiction. *Id.* at 1089. That is because, "[a]s with absolute, qualified, and Eleventh Amendment immunity, tribal sovereign immunity 'is an immunity from suit rather than a mere defense to liability; and . . . it is effectively lost if a case is erroneously

permitted to go to trial.'" *Id.* at 1090 (quoting *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 143–44 (1993)) (alteration in original) (emphasis omitted).

"[T]he issue of tribal sovereign immunity is [quasi-]jurisdictional." *Pan Am. Co. v. Sycuan Band of Mission Indians*, 884 F.2d 416, 418 (9th Cir. 1989); *see also Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1015–16 (9th Cir. 2007); *Evans v. McKay*, 869 F.2d 1341, 1345–46 (9th Cir. 1989). Normally, "'[s]ubject-matter jurisdiction' refers to 'the courts' statutory or constitutional power to adjudicate the case.'" *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010) (quoting *Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 89 (1998)) (emphasis omitted). Under that general rule, "when a federal court . . . lacks subject-matter jurisdiction, the court must dismiss the complaint," *sua sponte* if necessary. *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 n.12 (9th Cir. 2012) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). Sovereign immunity's "quasi-jurisdictional . . . nature," by contrast, means that "[i]t may be forfeited where the [sovereign] fails to assert it and therefore may be viewed as an affirmative defense." *Arizona v. Bliemeister (In re Bliemeister)*, 296 F.3d 858, 861 (9th Cir. 2002); *see also Alto v. Black*, 738 F.3d 1111, 1125 (9th Cir. 2013) (describing sovereign immunity as "a quasi jurisdictional issue"). In other words, sovereign immunity is not "jurisdictional in the sense that it must be raised and decided by this Court on its own motion," *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 515 n. 19 (1982), but rather in the sense that it "may be asserted at any time." *Mitchell v. Franchise Tax Board (In re Mitchell)*, 209 F.3d 1111, 1117 (9th Cir. 2000), *abrogated on other grounds as recognized by Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 853 n.6 (9th Cir. 2001). A

defendant may, however, be found to have waived sovereign immunity if it does not invoke its immunity in a timely fashion and takes actions indicating consent to the litigation. *See in re Bliemeister*, 296 F.3d at 862; *Hill v. Blind Indus. & Servs. of Md.*, 179 F.3d 754, 760 (9th Cir.), *amended on denial of reh'g*, 201 F.3d 1186 (9th Cir. 1999). Although sovereign immunity is only quasi-jurisdictional in nature, Rule 12(b)(1) is still a proper vehicle for invoking sovereign immunity from suit.[2] *See, e.g.*, *Maxwell*, 708 F.3d at 1081; *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012) *cert. denied sub nom. Pentonville Developers, Ltd. v. Republic of Iraq*, 134 S. Ct. 64 (2013); *Mills v. United States*, 742 F.3d 400, 404–05 (9th Cir. 2014).

In the context of a Rule 12(b)(1) motion to dismiss on the basis of tribal sovereign immunity, "the party asserting subject matter jurisdiction has the burden of proving its existence," i.e. that immunity does not bar the suit. *Miller*, 705 F.3d at 923 (quoting *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009)). When a district court is presented with a challenge to its subject matter jurisdiction, "'[n]o presumptive truthfulness attaches to [a] plaintiff's allegations.'" *Robinson*, 586 F.3d at 685 (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)). In resolving such a motion, "[a] district court may 'hear evidence regarding jurisdiction' and 'resolv[e] factual disputes where necessary.'" *Robinson*, 586 F.3d 685 (quoting *Augustine*, 704 F.2d at 1077).

Given these established principles, the district court was incorrect to conclude that "[e]ven if [the tribal defendants] are

---

[2] Fed. R. Civ. P. 12(b)(1) provides that a party may assert the defense of "lack of subject-matter jurisdiction" by motion.

entitled to tribal immunity from suit . . . it would be inappropriate . . . to dismiss the claims against them for lack of [subject matter] jurisdiction." To the contrary, as the tribal defendants invoked sovereign immunity in an appropriate manner and at an appropriate stage, i.e. in a Rule 12(b)(1) motion to dismiss, if they *were* entitled to tribal immunity from suit, the district court would lack jurisdiction over the claims against them and would be required to dismiss them from the litigation. *See Leeson*, 671 F.3d at 975 n. 12. The district court also should not have declined outright to consider the Nanty declaration and Garcia supplemental declaration as arguments raised for the first time on reply, for two reasons. First, the additional declarations did not, in fact, go to "new" arguments, but rather pertained to the defendants' original argument, raised in their Rule 12(b)(1) motion to dismiss, i.e. that they were entitled to sovereign immunity. Second, the declarations presented evidence going to the question of quasi-jurisdiction, and the district court was not bound to consider only the face of the complaint or motion to dismiss nor to accept the gamblers' allegations as true in resolving that issue. *See, e.g.*, *Robinson*, 586 F.3d at 685.

**B.**

The district court's alternative reasoning, however, was correct—with regard to the tribal defendants' invocation of tribal sovereign immunity, "the crucial question . . . [is] whether plaintiffs sued these defendants . . . in their official capacities or in their individual capacities"; the suit is in fact against the officials in their individual capacities; and it can therefore go forward.

As a general matter, individual or "[p]ersonal-capacity suits seek to impose personal liability upon a government official for [wrongful] actions he takes under color of . . . law," and that were taken in the course of his official duties. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). By contrast, official capacity suits ultimately seek to hold the entity of which the officer is an agent liable, rather than the official himself: they "'generally represent [merely] another way of pleading an action against an entity of which an officer is an agent.'" *Id.* at 165–66 (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). For this reason, an officer sued in his official capacity is entitled to "forms of sovereign immunity that the entity, *qua* entity, may possess." *Id.* at 167. An officer sued in his individual capacity, in contrast, although entitled to certain "personal immunity defenses, such as objectively reasonable reliance on existing law," *id.* at 166–67, cannot claim *sovereign* immunity from suit, "so long as the relief is sought not from the [government] treasury but from the officer personally." *Alden v. Maine*, 527 U.S. 706, 757 (1999).

These same principles fully apply to tribal sovereign immunity. Although "[t]ribal sovereign immunity 'extends to tribal officials when acting in their *official* capacity and within the scope of their authority,'" *Cook*, 548 F.3d at 727 (emphasis added) (quoting *Linneen v. Gila River Indian Cmty.*, 276 F.3d 489, 492 (9th Cir. 2002); *see also Miller*, 705 F.3d at 928 (same), tribal defendants sued in their *individual* capacities for money damages are not entitled to sovereign immunity, even though they are sued for actions taken in the course of their official duties. *See Maxwell*, 708 F.3d at 1089. As the Tenth Circuit has explained:

> The general bar against official-capacity claims . . . does not mean that tribal officials are immunized from individual-capacity suits *arising out of* actions they took in their official capacities . . . .  Rather, it means that tribal officials are immunized from suits brought against them *because of* their official capacities—that is, because the powers they possess in those capacities enable them to grant the plaintiffs relief on behalf of the tribe.

*Native Am. Distrib. v. Seneca-Cayuga Tobacco Co.*, 546 F.3d 1288, 1296 (10th Cir. 2008).

Following this rule, *Maxwell* held that two paramedics employed by a tribe (the Viejo Band) who allegedly had provided grossly negligent care to a shooting victim were not entitled to tribal sovereign immunity from a state tort action brought against them in their individual capacities.  708 F.3d at 1079, 1081, 1089–90.  Conducting a "remedy-focused analysis," *id.* at 1088, *Maxwell* explained:

> Tribal sovereign immunity derives from the same common law immunity principles that shape state and federal sovereign immunity. Normally, a suit like this one—brought against individual officers in their individual capacities—does not implicate sovereign immunity.   The plaintiff seeks money damages not from the state treasury but from the officer[s] personally. Due to the essential nature and effect of the relief sought, the sovereign is not the real, substantial party in interest.

*Id.* at 1087–88 (citations omitted) (internal quotation marks omitted) (alteration in original).  *Maxwell* went on to caution:

> In any suit against tribal officers, we must be sensitive to whether "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the [sovereign] from acting, or to compel it to act."

*Id.* at 1088 (quoting *Shermoen v. United States*, 982 F.2d 1312, 1320 (9th Cir. 1992)) (alteration in original).

As examples of such suits, *Maxwell* pointed to *Cook*, 548 F.3d 718, and *Hardin v. White Mountain Apache Tribe*, 779 F.2d 476 (9th Cir. 1985).  *Maxwell*, 708 F.3d at 1088–89. In *Cook*, for example, the plaintiffs' object was to reach the public treasury through a respondeat superior ruling.  *See Maxwell*, 708 F.3d at 1088; *see also Cook*, 548 F.3d at 727. The tribe in *Cook* was thus "the 'real, substantial party in interest,'" and the suit against the tribal officers in their official capacities was therefore barred by sovereign immunity principles.  *Maxwell*, 708 F.3d at 1088 (quoting *Cook*, 548 F.3d at 727).  Likewise, in *Hardin*, sovereign immunity barred the plaintiff from litigating a case against high-ranking tribal council members seeking to hold them individually liable for voting to eject the plaintiff from tribal land.  To hold otherwise, we ruled, would interfere with the tribe's internal governance.  *See Hardin*, 779 F.2d at 478. "*Hardin* was in reality an official capacity suit," barred by sovereign immunity, because the alternative, to "[h]old[] the defendants liable for their legislative functions[,] would . . . have attacked 'the very core of tribal sovereignty.'"  *Maxwell*,

708 F.3d at 1089 (quoting *Baugus v. Brunson*, 890 F. Supp. 908, 911 (E.D. Cal. 1995)).

*Maxwell*'s caution about masked official capacity suits aside, it remains "the general rule that individual officers are liable when sued in their individual capacities." 708 F.3d at 1089. So long as any remedy will operate against the officers individually, and not against the sovereign, there is "no reason to give tribal officers broader sovereign immunity protections than state or federal officers." *Id.*

The principles reiterated in *Maxwell* foreclose the tribal defendants' claim to tribal sovereign immunity in this case. The gamblers have not sued the Tribe. The district court correctly determined that the gamblers are seeking to hold the tribal defendants liable in their individual rather than in their official capacities. They "seek[] money damages 'not from the [tribal] treasury but from the [tribal defendants] personally.'" *Maxwell*, 708 F.3d at 1088 (quoting *Alden*, 527 U.S. at 757). Given the limited relief sought, the tribal defendants have not shown that "the judgment sought would expend itself on the [tribal] treasury or domain, or interfere with [tribal] administration, . . . [or] restrain the [Tribe] from acting." *Id.* (quoting *Shermoen*, 982 F.2d at 1320). Even if the Tribe agrees to pay for the tribal defendants' liability, that does not entitle them to sovereign immunity: "The unilateral decision to insure a government officer against liability does not make the officer immune from that liability." *Id.* at 1090.

In sum, the tribal defendants have not shown that the Tribe is the "real, substantial party in interest." *Id.* at 1088. They are not entitled to invoke the Tribe's sovereign immunity.

## III.

We do not have jurisdiction to decide whether the gamblers have successfully stated a claim against the defendants under 42 U.S.C. § 1983. That question is not one of sovereign immunity, but instead concerns whether the gamblers have stated a valid cause of action. The cause of action question is neither reachable under Rule 12(b)(1) nor appealable under *Burlington*, or, more generally, the collateral order doctrine derived from *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949). *See, e.g.*, *Zamani v. Carnes*, 491 F.3d 990, 994 (9th Cir. 2007); *Am. Fed. of Gov't Emps. Local 1 v. Stone*, 502 F.3d 1027, 1039–40 (9th Cir. 2007).

Nevertheless, we note that the intersection of tribal sovereign immunity principles and § 1983 doctrine appears to be a lingering source of confusion. Both the gamblers and defendants misapprehend the significance for the sovereign immunity inquiry—or rather, the lack of significance—of whether the tribal defendants were acting under color of state law or under color of tribal law when they seized the defendants. We briefly clarify why the § 1983 color of state law issue is not before us and expand on the distinction between that issue and tribal sovereign immunity.

The question whether defendants were acting in their official capacities under color of state or under color of tribal law is wholly irrelevant to the tribal sovereign immunity analysis. By its essential nature, an individual or personal capacity suit against an officer seeks to hold the officer personally liable for wrongful conduct taken *in the course of her official duties*. *Graham*, 473 U.S. at 165. As the officer *personally* is the target of the litigation, she may not claim

sovereign immunity—and that is so regardless whether she was acting under color of tribal or of state law at the time of the wrongful conduct in question.

By contrast, whether the defendants were acting under color of state or tribal law when they seized the gamblers *is* a necessary inquiry for the purposes of establishing the essential elements of the gamblers' § 1983 claim: "To maintain an action under section 1983 against . . . individual defendants, [a plaintiff] must . . . show: (1) that the conduct complained of was committed by a person acting under the color of *state* law; and (2) that this conduct deprived them of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Evans v. McKay*, 869 F.2d 1341, 1347 (9th Cir. 1989) (emphasis in original). As we have long recognized, "actions under section 1983 cannot be maintained in federal court for persons alleging a deprivation of constitutional rights under color of tribal law." *Id.*; *see also Bressi v. Ford*, 575 F.3d 891, 895 (9th Cir. 2009); *R.J. Williams Co. v. Fort Belknap Housing Authority*, 719 F.2d 979, 982 (9th Cir. 1983). The tribal defendants can thus be held liable under § 1983 only if they were acting under color of *state*, not tribal, law at the time they seized the gamblers.

*Evans* exemplifies this distinction. In *Evans*, non-Indians residing in a city on the Blackfeet Indian Reservation sued local police officers and tribal officials in their individual capacities under § 1983, arguing that their arrest under a city ordinance was unconstitutional. Under an agreement between the tribe and the city, the police officers in question were empowered to enforce both local and tribal law. 869 F.2d at 1343–44. The district court dismissed the suit under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, holding that the

tribal defendants and police officers possessed tribal sovereign immunity. *Id.* at 1345.

We reversed. Noting, first, that a § 1983 claim cannot be maintained against a defendant acting under color of tribal law, *Evans* held that, under the 12(b)(6) standard, the plaintiffs had sufficiently pleaded that both the individual police officers and individual tribal defendants had acted under color of state law when they arrested the plaintiffs under the city ordinance. *See id.* at 1347–49. In *Bressi*, similarly, we held that tribal officials were acting under color of state law because they were authorized to act under either, and, in the particular instance, stopped a non-Indian on a public highway and cited him for a violation of state law. 575 F.3d at 896–97.

This case law merely confirms the well-established rule that a § 1983 claim cannot be maintained against defendants who act under color of tribal rather than state law. It does not in any way disturb the tribal sovereign immunity principle that tribal officials are immune only from suits brought against them in their official rather than in their individual capacities.

## CONCLUSION

Tribal sovereign immunity is a quasi-jurisdictional issue that, *if* invoked at the Rule 12(b)(1) stage, must be addressed and decided. Accordingly, the district court erred in concluding that it could deny the tribal defendants' 12(b)(1) motion even if they were entitled to tribal sovereign immunity. The tribal defendants are not entitled to tribal sovereign immunity, however, because they are being sued in their individual capacities, rather than in their official

capacities, for actions taken in the course of their official duties; the gamblers "seek[] money damages 'not from the [tribal] treasury but from the [tribal defendants] personally'"; and any remedy will not operate against the Tribe. *Maxwell*, 708 F.3d at 1088 (quoting *Alden*, 527 U.S. at 757). Whether the tribal defendants were acting under state or tribal law does not matter for purposes of this analysis, although it will matter for purposes of deciding whether the gamblers can succeed in their § 1983 claim.

**AFFIRMED.**