**NOT FOR PUBLICATION**
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**FILED**

JUL 12 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| WAIBEL RANCHES, LLC, an Oregon Limited Liability Company; WAIBEL PROPERTIES, LLC, an Oregon Limited Liability Company, | No. 22-35703 |
| | D.C. No. 2:15-cv-02071-HL |
| Plaintiffs-Appellants, | MEMORANDUM* |
| SOUTH FORK RANCH LLC, | |
| Appellant, | |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, District Judge, Presiding

Argued and Submitted May 21, 2024
Anchorage, Alaska

Before: BYBEE, FRIEDLAND, and MILLER, Circuit Judges.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Waibel Ranches and South Fork Ranch ("Plaintiffs-Appellants") appeal the dismissal of four Quiet Title Act ("QTA") claims they brought against the United States. The claims pertain to two government easements across private land: the Teaters Road easement and the Big Summit Prairie easement. The district court dismissed Claims 1, 5, and 6 under Federal Rule of Civil Procedure 12(b)(1) as untimely based on the QTA's twelve-year statute of limitations. *See* 28 U.S.C. § 2409a(g). It dismissed Claim 2 as barred by sovereign immunity because the court believed that the claim could have been brought as a Tucker Act action, *id.* § 1491(a)(1), in the U.S. Court of Federal Claims, *see id.* § 2409a(a).

While this appeal was pending, the Supreme Court held that the QTA's statute of limitations is non-jurisdictional. *See Wilkins v. United States*, 598 U.S. 152 (2023). We may nevertheless affirm if the claims could have been dismissed under Federal Rule of Civil Procedure 12(b)(6). *See Al-Qarqani v. Chevron Corp.*, 8 F.4th 1018, 1027 (9th Cir. 2021). We therefore review the pleadings de novo, *see Jones v. Ford Motor Co.*, 85 F.4th 570, 573 (9th Cir. 2023) (per curiam), to assess whether "it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim," *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995); *accord Syed v. M-I, LLC*, 853 F.3d 492, 507 (9th Cir. 2017). We have jurisdiction under 28 U.S.C. § 1291. We reverse in part and affirm in part.

2

1. We reverse the dismissal of Claim 1, which concerns an alleged 350-foot gap in the recorded description of the government's easement across Teaters Road. "[I]f the government has apparently abandoned any claim it once asserted, and then it reasserts a claim, the later assertion is a new claim and the statute of limitations for an action based on that claim accrues when it is asserted." *Michel v. United States*, 65 F.3d 130, 132 (9th Cir. 1995) (per curiam) (citation omitted). The government cites *Kingman Reef Atoll Investments, LLC v. United States*, 541 F.3d 1189 (9th Cir. 2008), for the proposition that the government abandons an interest in property only when it does so "clearly and unequivocally[,] . . . as evidenced by documentation from a government official with authority to make such decisions on behalf of the United States," *id.* at 1201 (citation and quotation marks omitted). It is not clear whether that high standard for abandonment applies to cases involving the government's nonpossessory interests, but assuming that it does, we are satisfied in this case and on this posture that Plaintiffs-Appellants have adequately pleaded that it was reasonable to believe that the government had disclaimed its interest in the 350-foot gap. *See id.* at 1200.

The Teaters Road easement was created by actions undertaken by the Bureau of Land Management's ("BLM's") regional office. It was reasonable for Plaintiffs-Appellants to believe that senior personnel in BLM's same regional office could disclaim the government's interest in the easement. And in April 2015, that office

3

issued a press release declaring that "[t]he landowner was able to proceed with the closure [of the road to public access] because the BLM's Right-of-Way . . . did not cover the entire length of Teaters Road." Plaintiffs-Appellants also allege that BLM officials subsequently corroborated that disclaimer by informing Plaintiffs-Appellants that "the Easement . . . is and always has been invalid since its inception."

This case is therefore unlike *Kingman*, where the government's ownership interest was created by an executive order signed by President Franklin D. Roosevelt, but the plaintiffs argued that the interest was apparently abandoned by low-level government officials. *Id.* at 1192, 1200. Under the unique circumstances of this case, it was reasonable for Plaintiffs-Appellants to believe that "'the government did not continue to claim an interest' in the property." *Kingman*, 541 F.3d at 1200 (quoting *Shultz v. Dept. of Army*, 886 F.2d 1157, 1161 (9th Cir. 1989)). We conclude that the limitations period reset once the government re-asserted its interest in the 350-foot gap in September 2015.

Our conclusion does not foreclose the government from presenting additional evidence on remand suggesting that it was unreasonable for Plaintiffs-Appellants to believe that the United States disclaimed its interest in the 350-foot gap in early 2015. But on these allegations and in this Rule 12(b)(6) posture, we cannot say that the complaint so obviously forecloses the timeliness of Plaintiffs-Appellants' claims that dismissal would be appropriate at this juncture.

2. The district court erred in dismissing Claim 2, regarding an alleged 2015 agreement in which the government purportedly agreed that the Teaters Road easement was invalid (at least in part) and that the public would not be allowed to use the road. A claim otherwise cognizable under the QTA must be brought in the U.S. Court of Federal Claims if it "may be or could have been brought" under the Tucker Act. 28 U.S.C. § 2409a(a); *see id.* § 1491(a)(1) (giving the U.S. Court of Federal Claims jurisdiction over claims "founded . . . upon any express or implied contract with the United States"). The QTA is the appropriate cause of action when "the remedy sought pragmatically involve[s] some type of declaration as to the ownership rights of the parties," including "disputes over the right to an easement and suits seeking a declaration as to the scope of an easement." *Robinson v. United States*, 586 F.3d 683, 688, 686 (9th Cir. 2009). Many claims affecting title turn on contractual agreements. *See, e.g., M&T Bank v. SFR Invs. Pool 1, LLC*, 963 F.3d 854, 858 (9th Cir. 2020) ("[T]he quiet title claims are entirely 'dependent' upon . . . an interest created by contract."). If the mere presence of a contractual agreement were enough to preclude application of the QTA, the Tucker Act exception would swallow the QTA whole. On the other hand, "a suit that does not challenge [the government's property interest] but instead concerns the use of land as to which [the property interest] is not disputed can sound in tort or contract and not come within the scope of the QTA." *Robinson*, 586 F.3d at 688.

5

Claim 2 seeks a declaration as to the scope of the Teaters Road easement: Plaintiffs-Appellants claim that, in light of the 2015 agreement, the easement does not permit the government to license use of the easement to the general public. Put another way, the claim contests the existence of an easement that includes the public as licensees. To be sure, Plaintiffs-Appellants have at times described Claim 2 as a breach-of-contract claim, but that is immaterial if the "essence and bottom line" of the claim, *United States v. Mottaz*, 476 U.S. 834, 842 (1986), seek a declaration resolving the scope of an easement, *see Robinson*, 586 F.3d at 686; *see also id.* at 688 ("[A] suit that actually challenges the federal government's title, however denominated, falls within the scope of the QTA . . . .").

3. Claim 5, which the district court dismissed as time-barred, concerns whether the Big Summit Prairie easement allows the United States to license the easement to the general public. Plaintiffs-Appellants do not dispute the existence of the government's easement, which was granted in 1966. Their claim is narrower— they challenge only the government's decision to allow public access to the easement. They argue that their claim is not time-barred because a reasonable landowner would not have been on notice of the government's claim that the easement allows for public access until 2021, when the government first granted public access. We agree there is some potential ambiguity in the language of the recorded easement, and, taking the allegations in the complaint as true, the

6

government's actions between 1966 and 2021 would support the belief that the easement does not include the right of public access. Accordingly, we agree that the claim is not time barred. *See Shultz*, 886 F.2d at 1160 (holding that the limitations period does not begin to run if "the United States' claim is ambiguous or vague"). As alleged, the government had not, until 2021, "adopted a position in conflict" with Plaintiffs-Appellants or their predecessors in interest with respect to the public's use of the easement. *Mills v. United States*, 742 F.3d 400, 405 (9th Cir. 2014). In light of the facts alleged here, Plaintiffs-Appellants were not required to file a preemptive suit "to protect against the possibility, however remote, that the government might someday" claim that the Big Summit Prairie easement includes the right to public access. *Michel*, 65 F.3d at 132.

4. We affirm the dismissal of Claim 6, which assumes that the Big Summit Prairie easement does allow for public access but that the government abandoned that interest by not granting the public access until 2021. Plaintiffs-Appellants' abandonment argument turns solely on the allegation that the government never allowed the public to use the Big Summit Prairie easement. But "[i]t is well established that the United States does not abandon its claims to property by inaction." *Kingman*, 541 F.3d at 1199. As alleged, Claim 6 "fail[s] to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), so we affirm its dismissal without prejudice.

Each party shall bear its own costs on appeal.

**AFFIRMED in part, REVERSED in part, and REMANDED.**