******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

BRIAN LEWIS ET AL. *v.* WILLIAM
CLARKE ET AL.
(SC 19464)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Robinson, Js.

*Argued December 15, 2015—officially released March 15, 2016*

*Daniel J. Krisch*, with whom was *Robert A. Rhodes*,
for the appellant (named defendant).

*James M. Harrington*, for the appellees (plaintiffs).

*Opinion*

EVELEIGH, J. The dispositive issue in this appeal is whether the trial court properly denied the defendant William Clarke's[1] motion to dismiss the claims made by the plaintiffs, Brian Lewis and Michelle Lewis, on the ground that tribal sovereign immunity did not apply to their claims against the defendant in his individual capacity. On appeal, the defendant asserts that the trial court improperly denied his motion to dismiss because tribal sovereign immunity barred the plaintiffs' claims against him for an accident that occurred while he was acting within the scope of his employment with the Mohegan Tribal Gaming Authority. We agree with the defendant and, accordingly, reverse the judgment of the trial court.

The following undisputed facts and procedural history are relevant to this appeal. "On October 22, 2011 . . . Brian Lewis was operating a motor vehicle southbound on [Interstate 95] in Norwalk, Connecticut. . . . Michelle Lewis was his passenger. [The defendant] was driving a limousine behind the plaintiffs. Suddenly and without warning, [the defendant] drove the limousine into the rear of the plaintiffs' vehicle and propelled the plaintiffs' vehicle forward with such force that it came to rest partially on top of a [concrete] barrier on the left-hand side of the highway. The collision and the plaintiffs' resulting injuries were caused by [the defendant's] negligence. At that time, [the defendant] was a Connecticut resident, had a Connecticut driver's license, and, according to the affidavit of Michael Hamilton, the [Mohegan Tribal Gaming Authority's director of transportation], was driving a limousine owned by the [Mohegan Tribal Gaming Authority] and was employed by the [Mohegan Tribal Gaming Authority] to do so. Specifically, [the defendant] was driving patrons of the Mohegan Sun Casino to their homes. The limousine was covered by an automobile insurance policy issued by Arch Insurance." (Footnote omitted.)

The plaintiffs filed an action against the defendant claiming, inter alia, that they sustained injuries as a result of the defendant's negligence and carelessness.[2] The defendant filed a motion to dismiss the complaint, claiming that the trial court lacked subject matter jurisdiction because he was entitled to tribal sovereign immunity. In support of his motion, the defendant filed, inter alia, the affidavit from Hamilton. The plaintiffs opposed the motion, claiming that the trial court was not without subject matter jurisdiction because the doctrine of tribal sovereign immunity does not extend to a tribal employee, who is named in his individual capacity, and the damages are sought from the employee, not from the tribe. The trial court denied the defendant's motion to dismiss, determining that it was not deprived of jurisdiction over the plaintiffs' claims under the doctrine of tribal sovereign immunity because the plaintiffs

sought money damages from the defendant personally, not from the Mohegan Tribal Gaming Authority. This appeal followed.[3]

On appeal, the defendant claims that the trial court improperly denied his motion to dismiss. Specifically, the defendant asserts that the trial court improperly concluded that the doctrine of tribal sovereign immunity did not extend to the plaintiffs' claims against the defendant in the present case because they were claims against the defendant in his individual capacity. The defendant asserts that, because he was acting within the scope of his employment for the Mohegan Tribal Gaming Authority and the Mohegan Tribal Gaming Authority is an arm of the Mohegan Tribe (tribe),[4] tribal sovereign immunity bars the plaintiffs' claims against him. In response, the plaintiffs assert that the trial court properly denied the defendant's motion to dismiss. In support of their position, the plaintiffs assert that the remedy sought in their complaint was for damages against the defendant individually and, therefore, would not affect the tribe, accordingly, tribal immunity should not be extended to deprive the court of jurisdiction over their claims.

First, we must address the threshold issue of whether the decision of the trial court denying the motion to dismiss is immediately appealable. "The general rule is that the denial of a motion to dismiss is an interlocutory ruling and, therefore, is not a final judgment for purposes of appeal. . . . The denial of a motion to dismiss based on a colorable claim of sovereign immunity, by contrast, is an immediately appealable final judgment because the order or action so concludes the rights of the parties that further proceedings cannot affect them." (Internal quotation marks omitted.) *Sullins* v. *Rodriguez*, 281 Conn. 128, 130 n.2, 913 A.2d 415 (2007); see also *Kizis* v. *Morse Diesel International, Inc.*, 260 Conn. 46, 51, 794 A.2d 498 (2002) (denial of motion to dismiss filed by tribal employees based on tribal sovereign immunity constitutes final judgment for purpose of appeal). In the present case, because the basis of the defendant's motion to dismiss was a claim of tribal sovereign immunity, we conclude that the denial of the motion to dismiss is an immediately appealable final judgment.

Having concluded that the decision of the trial court denying the motion to dismiss is an immediately appealable final judgment, we next address the standard of review and the general principles governing a trial court's disposition of a motion to dismiss that challenges jurisdiction. The defendant's claim that the plaintiffs' claims are barred because the actions arose in the course of his employment with the Mohegan Tribal Gaming Authority is an assertion of "sovereign immunity [that] implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. . . .

A determination regarding a trial court's subject matter jurisdiction is a question of law." (Internal quotation marks omitted.) *Bloom* v. *Gershon*, 271 Conn. 96, 113, 856 A.2d 335 (2004); see also *Fresenius Medical* v. *Puerto Rico Cardiovascular*, 322 F.3d 56, 61 (1st Cir.) (question of whether entity is arm of state entitled to immunity is legal one), cert. denied, 540 U.S. 878, 124 S. Ct. 296, 157 L. Ed. 2d 142 (2003). Accordingly, "[o]ur review of the court's ultimate legal conclusion[s] and resulting [determination] of the motion to dismiss will be de novo." (Internal quotation marks omitted.) *Gold* v. *Rowland*, 296 Conn. 186, 200, 994 A.2d 106 (2010).

Depending on the record before it, a trial court ruling on a motion to dismiss for lack of subject matter jurisdiction pursuant to Practice Book § 10-31 (a) (1) may decide that motion on the basis of: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. . . . Different rules and procedures will apply, depending on the state of the record at the time the motion is filed." (Citation omitted; internal quotation marks omitted.) *Conboy* v. *State*, 292 Conn. 642, 651, 974 A.2d 669 (2009).

If the trial court decides the motion "on the basis of the complaint alone, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . .

"In contrast, if the complaint is supplemented by *undisputed facts* established by affidavits submitted in support of the motion to dismiss . . . other types of undisputed evidence . . . [or] public records of which judicial notice may be taken . . . the trial court, in determining the jurisdictional issue, may consider these supplementary undisputed facts and need not conclusively presume the validity of the allegations of the complaint. . . . Rather, those allegations are tempered by the light shed on them by the [supplementary undisputed facts]. . . . If affidavits [or] other evidence submitted in support of a defendant's motion to dismiss conclusively establish that jurisdiction is lacking, and the plaintiff fails to undermine this conclusion with counteraffidavits . . . or other evidence, the trial court may dismiss the action without further proceedings. . . . If, however, the defendant submits either no proof to rebut the plaintiff's jurisdictional allegations . . . or only evidence that fails to call those allegations into question . . . the plaintiff need not supply counteraffidavits or other evidence to support the complaint, but may rest on the jurisdictional allegations therein. . . .

"Finally, where a jurisdictional determination is dependent on the resolution of a critical factual dispute,

it cannot be decided on a motion to dismiss in the absence of an evidentiary hearing to establish jurisdictional facts. . . . Likewise, if the question of jurisdiction is intertwined with the merits of the case, a court cannot resolve the jurisdictional question without a hearing to evaluate those merits. . . . An evidentiary hearing is necessary because a court cannot make a critical factual [jurisdictional] finding based on memoranda and documents submitted by the parties." (Citations omitted; emphasis in original; footnotes omitted; internal quotation marks omitted.) Id., 651–54; see also *Rocky Hill* v. *SecureCare Realty, LLC*, 315 Conn. 265, 277–78, 105 A.3d 857 (2015).

It is well established that "Indian tribes are domestic dependent nations that exercise inherent sovereign authority. *Oklahoma Tax* [*Commission*] v. *Citizen Band Potawatomi Tribe of* [*Oklahoma*], 498 U.S. 505, 509, 111 S. Ct. 905, 112 L. Ed. 2d 1112 (1991) . . . . As dependents, the tribes are subject to plenary control by Congress. See *United States* v. *Lara*, 541 U.S. 193, 200, 124 S. Ct. 1628, 158 L. Ed. 2d 420 (2004) ([t]he [c]onstitution grants Congress powers we have consistently described as plenary and exclusive to legislate in respect to Indian tribes). And yet they remain separate sovereigns [preexisting] the [c]onstitution. *Santa Clara Pueblo* v. *Martinez*, 436 U.S. 49, 56, 98 S. Ct. 1670, 56 L. Ed. 2d 106 (1978). Thus, unless and until Congress acts, the tribes retain their historic sovereign authority. *United States* v. *Wheeler*, 435 U.S. 313, 323, 98 S. Ct. 1079, 55 L. Ed. 2d 303 (1978).

"Among the core aspects of sovereignty that tribes possess—subject, again, to congressional action—is the common-law immunity from suit traditionally enjoyed by sovereign powers. . . . That immunity, we have explained, is a necessary corollary to Indian sovereignty and self-governance. *Three Affiliated Tribes of Fort Berthold Reservation* v. *Wold Engineering, P.C.*, 476 U.S. 877, 890, 106 S. Ct. 2305, 90 L. Ed. 2d 881 (1986); cf. The Federalist No. 81, p. 511 (B. Wright ed. 1961) ([Alexander] Hamilton) ([i]t is inherent in the nature of sovereignty not to be amenable to suit without consent). And the qualified nature of Indian sovereignty modifies that principle only by placing a tribe's immunity, like its other governmental powers and attributes, in [Congress'] hands. See *United States* v. *United States Fidelity & Guaranty Co.*, 309 U.S. 506, 512, 60 S. Ct. 653, 84 L. Ed. 894 (1940) . . . ([i]t is as though the immunity which was theirs as sovereigns passed to the United States for their benefit)." (Citations omitted; internal quotation marks omitted.) *Michigan* v. *Bay Mills Indian Community*, U.S. , 134 S. Ct. 2024, 2030, 188 L. Ed. 2d 1071 (2014).

The United States Supreme Court has recently explained that the "baseline position . . . is tribal immunity; and [t]o abrogate [such] immunity, Congress

must unequivocally express that purpose. . . . That rule of construction reflects an enduring principle of Indian law: Although Congress has plenary authority over tribes, courts will not lightly assume that Congress in fact intends to undermine Indian self-government." (Citations omitted; internal quotation marks omitted.) Id., 2031–32.

In the present case, the plaintiffs' complaint contained two counts. Both counts originally named both the defendant and the Mohegan Tribal Gaming Authority. Prior to the defendant filing his motion to dismiss, the plaintiffs withdrew all of their claims against the Mohegan Tribal Gaming Authority. Therefore, in deciding the motion to dismiss, the only issue before the trial court was whether the doctrine of tribal sovereign immunity barred the plaintiffs' claims against the defendant in his individual capacity.

As we explained previously in this opinion, "if the complaint is supplemented by undisputed facts established by affidavits submitted in support of the motion to dismiss . . . [or] other types of undisputed evidence . . . the trial court, in determining the jurisdictional issue, may consider these supplementary undisputed facts . . . ." (Citations omitted; emphasis omitted; footnote omitted.) *Conboy* v. *State*, supra, 292 Conn. 651–52.

In their complaint, the plaintiffs themselves alleged that "at all relevant times herein, [the defendant] was acting in the scope of his employment with the Mohegan Tribal Gaming Authority and was driving said vehicle with the permission of the Mohegan Tribal Gaming Authority as its [employee, agent or servant]." Furthermore, accompanying his motion to dismiss, the defendant filed the affidavit from Hamilton, which averred that the defendant was driving a limousine owned by the Mohegan Tribal Gaming Authority at the time of the accident. Hamilton further averred that the defendant was employed by the Mohegan Tribal Gaming Authority to use the limousine to drive patrons of the Mohegan Sun Casino to their homes. The plaintiffs did not present any evidence that the defendant was acting outside the scope of his employment at the time of the accident. Therefore, the undisputed facts establish that the defendant was acting within the scope of his employment when the accident that injured the plaintiffs occurred.[5]

It is well established that "[t]he doctrine of tribal immunity extends to individual tribal officials acting in their representative capacity and within the scope of their authority." (Internal quotation marks omitted.) *Romanella* v. *Hayward*, 933 F. Supp. 163, 167 (D. Conn. 1996), aff'd, 114 F.3d 15 (2d Cir. 1997), citing F. Cohen, Federal Indian Law (1986) p. 284 ("it has been held that where the tribe itself is not subject to suit, tribal officers cannot be [held liable] on the basis of tribal obliga-

tions"); see *Romanella* v. *Hayward*, supra, 167 ("[The plaintiff's] action against the tribal officers is a suit against the tribe. As such, the individual defendants' immunity from suit is coextensive with the [t]ribe's immunity from suit."); see also, e.g., *Hardin* v. *White Mountain Apache Tribe*, 779 F.2d 476, 478 (9th Cir. 1985); *Tenneco Oil Co.* v. *Sac & Fox Tribe of Indians*, 725 F.2d 572, 574 (10th Cir. 1984). Indeed, this court has also recognized that tribal immunity extends to individual tribal officials and employees acting within the scope of their authority. *Kizis* v. *Morse Diesel International, Inc.*, supra, 260 Conn. 54.

The United States Court of Appeals for the Second Circuit has also addressed the implications of tribal immunity in actions against individual employees of the tribe. In *Chayoon* v. *Chao*, 355 F.3d 141 (2d Cir. 2004), cert. denied sub nom. *Chayoon* v. *Reels*, 543 U.S. 966, 125 S. Ct. 429, 160 L. Ed. 2d 336 (2004), the plaintiff appealed the dismissal of certain employment claims against several individuals who were either on the Mashantucket Pequot Tribal Council or were officers or employees of Mashantucket Pequot Gaming Enterprise, which operates the gaming facility known as Foxwoods Resort Casino. The Second Circuit rejected the plaintiff's claims, concluding that "Indian tribes enjoy the same immunity from suit enjoyed by sovereign powers and are 'subject to suit only where Congress has authorized the suit or the tribe has waived its immunity.' . . . Furthermore, [the plaintiff] cannot circumvent tribal immunity by merely naming officers or employees of the [t]ribe when the complaint concerns actions taken in [the] defendants' official or representative capacities and the complaint does not allege they acted outside the scope of their authority." (Citations omitted.) Id., 143.

Similarly, the United States District Court for the District of Connecticut has also examined whether the doctrine of tribal immunity extended to claims for damages against two employees of the Mashantucket Pequot Museum and Research Center, Inc., where the complaint alleged that they were being named, inter alia, in their "individual capacities." *Bassett* v. *Mashantucket Pequot Museum & Research Center, Inc.*, 221 F. Supp. 2d 271, 274 (D. Conn. 2002). In addressing the claims against the employees in their individual capacities, the court explained that "[i]n the tribal immunity context, a claim for damages against a tribal official lies outside the scope of tribal immunity *only where the complaint pleads—and it is shown—that a tribal official acted beyond the scope of his authority to act on behalf of the [t]ribe.*" (Emphasis added.) Id., 280; see *Garcia* v. *Akwesasne Housing Authority*, 105 F. Supp. 2d 12, 18 (N.D.N.Y. 2000) (stating that personal capacity claim may proceed against tribal official if allegations indicate that tribal official acted outside scope of delegated authority), vacated on other grounds, 268 F.3d 76 (2d Cir. 2001); see also *Puyallup*

*Tribe, Inc.* v. *Washington Game Dept.*, 433 U.S. 165, 170–73, 97 S. Ct. 2616, 53 L. Ed. 2d 667 (1977) (claim permitted against tribal officials, who were acting as fishermen, rather than tribal government officers when they had engaged in challenged activities).

The District Court further explained that "[c]laimants may not simply describe their claims against a tribal official as in his 'individual capacity' in order to eliminate tribal immunity. . . . Permitting such a description to affect tribal immunity would eviscerate its protections and ultimately subject [t]ribes to damages actions for every violation of state or federal law. The sounder approach is to examine the actions of the individual tribal defendants. Thus, the [c]ourt holds that a tribal official—even if [named] in his 'individual capacity'—is only 'stripped' of tribal immunity when he acts 'manifestly or palpably beyond his authority . . . .' " (Emphasis omitted.) *Bassett* v. *Mashantucket Pequot Museum & Research Center, Inc.*, supra, 221 F. Supp. 2d 280; see also *Sue/Perior Concrete & Paving, Inc.* v. *Seneca Gaming Corp.*, 99 App. Div. 3d 1203, 1204, 952 N.Y.S.2d 353 (2012) ("[a]lthough tribal immunity does not necessarily extend to individual members of the tribe . . . it does as a rule [extend] to individual tribal officials acting in their representative capacity and within the scope of their authority" [citations omitted; internal quotation marks omitted]); *Gooding* v. *Ketcher*, 838 F. Supp. 2d 1231, 1246 (N.D. Okla. 2012) ("[a] tribal official, even if [named] in an individual capacity, is only stripped of tribal immunity when he acts without any colorable claim of authority" [internal quotation marks omitted]).

Nevertheless, the plaintiffs assert, and the trial court agreed, that the doctrine of tribal immunity should not be applied in the present case. Specifically, the plaintiffs assert that the doctrine of tribal immunity does not apply in the present case because the tribe is neither a party, nor the real party in interest because the remedy sought will be paid by the defendant himself, and not the tribe. In support of their claim, the plaintiffs cite and the trial court relied on *Maxwell* v. *San Diego*, 708 F.3d 1075 (9th Cir. 2013).

In *Maxwell*, family members of a shooting victim brought an action alleging that the victim had been delayed medical treatment. Id., 1079–81. The United States Court of Appeals for the Ninth Circuit reversed the decision of the trial court dismissing an action against paramedics employed by a tribal fire department. Id., 1081. In reversing the trial court's judgment, the Ninth Circuit concluded that tribal immunity did not bar the claims against the paramedics because "a remedy would operate against them, not the tribe." Id., 1087. The Ninth Circuit explained that because the plaintiffs had brought an action against the tribal paramedics in their individual capacities for money dam-

ages, "[a]ny damages will come from [the paramedics'] own pockets, not the tribal treasury." Id., 1089.

We reject the plaintiffs' invitation to apply *Maxwell* in the present case. The Ninth Circuit acknowledged that *Maxwell* concerned "allegedly grossly negligent acts committed outside tribal land pursuant to an agreement with a [nontribal] entity." Id., 1090. The fact that the allegations against the plaintiffs in *Maxwell* involved claims of gross negligence makes the Ninth Circuit's holding in that case distinguishable from the present case. Actions involving claims of more than negligence are often deemed to be outside the scope of employment and, therefore, not subject to sovereign immunity. See, e.g., *Gedrich* v. *Dept. of Family Services*, 282 F. Supp. 2d 439, 474–75 (E.D. Va. 2003) ("[t]he doctrine of sovereign immunity does not shield state employees from liability for acts or omissions constituting gross negligence"); *Young* v. *Mount Ranier*, 238 F.3d 567, 578 (4th Cir. 2001) (discussing Maryland statute providing that "state personnel are immune from suit and from liability for tortious conduct committed within the scope of their public duties and without malice or gross negligence" [footnote omitted]); see also General Statutes § 4-165 ("[n]o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment").[6]

Indeed, even the Ninth Circuit does not always follow the approach applied in *Maxwell*. See, e.g., *Murgia* v. *Reed*, 338 Fed. Appx. 614, 616 (9th Cir. 2009). In *Murgia*, the Ninth Circuit explained that "[t]he [trial] court erred in concluding that tribal sovereign immunity did not apply solely because the [d]efendants were [named] in their individual capacities. In our circuit, the fact that a tribal officer is [named] in his individual capacity does not, without more, establish that he lacks the protection of tribal sovereign immunity. . . . If the [defendant tribal employees] were acting for the tribe within the scope of their authority, they are immune from [the plaintiff's claims] regardless of whether the words 'individual capacity' appear on the complaint." (Citation omitted.) Id. Similarly, in an opinion published approximately one month before *Maxwell*, the Ninth Circuit explained that a tribe's sovereign immunity "extends to its officials who were acting in their official capacities and within the scope of their authority when they taxed transactions occurring on the reservation." *Miller* v. *Wright*, 705 F.3d 919, 928 (9th Cir. 2013). Furthermore, no other jurisdictions have adopted the "remedy sought" approach applied in *Maxwell*.

On the basis of the foregoing, we conclude that the doctrine of tribal sovereign immunity extends to the plaintiffs' claims against the defendant because the undisputed facts of this case establish that he was an

employee of the tribe and was acting within the scope of his employment when the accident occurred. We agree with the United States District Court of the District of Connecticut that the plaintiffs cannot circumvent tribal immunity by merely naming the defendant, an employee of the tribe, when the complaint concerns actions taken within the scope of his duties and the complaint does not allege, nor have the plaintiffs offered any other evidence, that he acted outside the scope of his authority. See *Chayoon* v. *Chao*, supra, 355 F.3d 143. Accordingly, we conclude that the trial court improperly determined that tribal sovereign immunity did not extend to the defendant in the present case and, therefore, improperly denied the defendant's motion to dismiss the plaintiffs' complaint.

The judgment is reversed and the case is remanded with direction to grant the defendant's motion to dismiss.

In this opinion the other justices concurred.

[1] Although Clarke's employer, the Mohegan Tribal Gaming Authority, was also named as a defendant in this case, it is not a party to the present appeal. See footnote 2 of this opinion. For the sake of simplicity, references to the defendant in this opinion are to Clarke in his individual capacity.

[2] Although the plaintiffs initially filed claims against the Mohegan Tribal Gaming Authority, those claims were subsequently withdrawn.

[3] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] The parties do not dispute that the Mohegan Tribal Gaming Authority is an arm of the tribe. Therefore, we do not address this issue.

[5] The plaintiffs do not assert that tribal sovereign immunity is inapplicable in the present case because the accident occurred outside of the reservation. Therefore, we do not address the issue of whether, and to what extent, a tribe is immune from liability arising out of commercial activities that occur outside the reservation.

[6] The Ninth Circuit recently followed the *Maxwell* "remedy sought" approach in the case of *Pistor* v. *Garcia*, 791 F.3d 1104, 1109 (9th Cir. 2015). In *Pistor*, the Ninth Circuit concluded that tribal immunity did not extend to employees of a tribe who had an action brought against them for working with local police to seize gamblers at the casino and steal their property. Id., 1108–1109. Once again the decision of the Ninth Circuit not to apply tribal immunity to the defendants is distinguishable because their actions were beyond the scope of their authority. Indeed, the plaintiffs in *Pistor* alleged that the tribal employees developed a scheme with local police "concocted with the goal of punishing plaintiffs for winning so much at . . . [their casino], and the hope of stealing back some of the funds that the plaintiffs had legitimately won." (Internal quotation marks omitted.) Id., 1109. Like *Maxwell*, the facts of *Pistor* are distinguishable from the present case, where there is no allegation that the defendant was acting outside the scope of his employment or in a grossly negligent manner.