Filed 10/31/17; Certified for Publication 11/29/17 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| ROSE BROWN et al.,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br> AUGUSTIN GARCIA et al.,<br><br>      Defendants and Respondents. | A150374<br><br>(Lake County<br>Super. Ct. No. CV415928) |

This action is between two groups of the Elem Indian Colony Pomo Tribe (the Tribe), the "Brown faction" (plaintiffs) and the "Garcia Council" (defendants). Plaintiffs sued the Garcia Council over allegedly defamatory statements published in a notification that warned they would be disenrolled if the Tribe's General Council found them guilty of specified crimes. The trial court ruled the lawsuit was barred by sovereign immunity and dismissed the complaint. We affirm.

**BACKGROUND**

This action arose against a decades-long backdrop of disputes over Tribal leadership. In 2016 defendants disseminated an "Order of Disenrollment" (the Order) that accused plaintiffs of multiple violations of tribal, state and federal laws. The Order stated, " '[i]f you are found guilty by the General Council of these offenses against the Tribe, you may be punished by: a. DISENROLLMENT—loss of membership.' "

1

Plaintiffs sued defendants for defamation and false light based on the allegations of misdeeds described in the Order. The complaint stated that defendants "purport to be the elected Executive Council of the Tribe," but asserted they were unprotected by sovereign immunity because they acted in their personal capacities outside the scope of their tribal authority and "[t]his is not an internal tribal dispute or a membership dispute." Plaintiffs further alleged the tribal ordinance pursuant to which defendants published the Order was invalid because it lacked the approval from the Bureau of Indian Affairs required by the Tribe's constitution.

Defendants moved to quash the summons and complaint as barred by sovereign immunity. They asserted the allegedly defamatory statements were made pursuant to their lawful authority as tribal officials, which includes "culling from the active membership voting list tribal members who are alleged to have conducted crimes against the Tribe pursuant to tribal ordinance #GCORD08412." Further, "Plaintiffs' allegations concern a non-justiciable intra-tribal matter upon which this court has no jurisdiction and which should be resolved in the proper tribal forum, i.e. before Plaintiffs' Tribal Council per the Tribe's ordinance. As such, the Court should not allow this matter to move forward because it will require the Court to review and interpret tribal law, custom and practice." Accordingly, defendants contended, the Tribe's sovereign immunity shielded them from being sued in state court.

In opposition, plaintiffs argued sovereign immunity was inapplicable because they were suing defendants only in their individual capacities and sought relief only from them as individuals, not from the Tribe. Plaintiffs denied that their action would require the court to adjudicate an intra-tribal dispute or insert itself in tribal law, custom, practice or tradition. Rather, they argued, "Plaintiffs are simply asking that the Defendants, in their individual capacities, be held accountable for their defamation of fellow Californians." Alternatively, plaintiffs asserted it was premature to dismiss the case based on sovereign immunity in light of factual questions as to whether defendants acted within their official or personal capacities when they issued the Order.

The court granted the motion to quash. It concluded defendants' evidence established they acted within the scope of their tribal authority in publishing the allegedly defamatory Order and that plaintiffs failed to overcome that showing. "[T]he evidence shows that the Tribe is a federally recognized Indian Tribe. Additionally, Defendants have provided evidence that all named Defendants are tribal officials. Specifically, Defendants provided a letter from Superintendent Troy Burdick from the U.S. Dept. of the Interior, in which Superintendent Burdick states that all named Defendants are recognized by the United States Government as the Executive Committee members for purposes of a government-to-government relationship. Garcia also attests that he was elected to tribal office in 2014 and currently serves as the Chairman pursuant to a 2014 tribal election, and that the other Defendants were acting under color of tribal authority when the Ordinance was issued. As a result, there is evidentiary support for Defendants' position that they were tribal officials at the relevant time.

"In response, Plaintiffs dispute that Defendants are members of the Elem Tribe's federally recognized government. However, Plaintiffs provide no evidence in support of their contention that Defendants are not tribal officials or were not tribal officials at the relevant time. An unverified complaint may not be considered as supplying the necessary facts. [Citation.] Accordingly, the record supports a finding that Defendants were tribal officials at the time of the allegations.

"Next, Defendants provide evidence that the Ordinance establishing a process for disenfranchisement was put into effect in 2012 by the Elem Indian Colony, and is still in effect as tribal law. And as discussed above, Defendants further provide evidence that they were acting within the scope of their tribal authority when they determined that Plaintiffs should be disenrolled from the Tribe pursuant to the Ordinance, for the reasons stated in the allegedly defamatory document that is the subject of this lawsuit. Consequently, Defendants' evidence supports the conclusion that they were acting within the scope of their tribal authority, on the Tribe's behalf, when they issued the allegedly defamatory statements."

3

Turning to plaintiffs' evidence, the trial court found it insufficient to rebut defendants' showing. "Plaintiff's counsel . . . attests in her declaration that the 'Constitution and Bylaws of the Elem Indian Colony' (the 'Constitution') does not grant tribal officials the right to publish criminal allegations against Tribal Members. Plaintiffs further provide evidence that the Constitution states that any new rules regarding the loss of membership must be approved by the Secretary of the Interior, and provide[] an email from Superintendent Burdick stating that he has 'no evidence that [the ordinance] has been submitted to [the Office of the Interior] for approval.' This purported evidence of Superintendent Burdick's statement is hearsay, and even if considered, it is inconclusive." The court further found plaintiffs' evidence was insufficient to overcome defendants' showing that the Ordinance, although disputed, was in effect when the alleged defamation occurred. "Accordingly, Plaintiffs have failed to show by preponderance of the evidence that Defendants were acting outside the scope of their official tribal capacities when they drafted and circulated the [Order], and thus all jurisdictional criteria are met."

"In sum, the record before the Court shows that Plaintiffs' two causes of action arise from actions that Defendants took because of their official capacities as tribal officials, namely, disenrolling Plaintiffs on the basis of their alleged violations of tribal law. Plaintiffs do not provide sufficient evidence to meet their burden. Additionally, for the Court to litigate the dispute, the Court would have to determine whether Defendants were authorized to publish the document and disenroll Plaintiffs, which itself requires an impermissible analysis of Tribal law and constitutes a determination of a non-justiciable intra-tribal dispute. [Citations.] As a result, sovereign immunity applies."

Plaintiffs filed this timely appeal.

## DISCUSSION

### I. Legal Standards

"On a motion to quash service of summons, the plaintiff bears the burden of proving by a preponderance of the evidence that all jurisdictional criteria are met. [Citations.] The burden must be met by competent evidence in affidavits and

4

authenticated documents; an unverified complaint may not be considered as supplying the necessary facts." (*Nobel Floral, Inc. v. Pasero* (2003) 106 Cal.App.4th 654, 657–658.) "In the absence of conflicting extrinsic evidence relevant to the issue, the question of whether a court has subject matter jurisdiction over an action against an Indian tribe is a question of law subject to our de novo review." (*Lawrence v. Barona Valley Ranch Resort and Casino* (2007) 153 Cal.App.4th 1364, 1369.) But "[w]hen the facts giving rise to jurisdiction are conflicting, the trial court's factual determinations are reviewed for substantial evidence. [Citation.] Even then, we review independently the trial court's conclusions as to the legal significance of the facts." (*CenterPoint Energy, Inc. v. Superior Court* (2007) 157 Cal.App.4th 1101, 1117.) We affirm a trial court's order if correct on any theory. (*J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co.* (1997) 59 Cal.App.4th 6, 15–16.)

## II. Analysis

Plaintiffs assert the court misapplied the law when it considered whether defendants issued the alleged defamatory statements in the scope of their official capacities and whether allowing the case to proceed in state court would interfere with tribal administration. In their view, the only relevant facts are that they sued defendants in their individual, not tribal, capacities, and sought relief only from them as individuals, not from the Tribe. Plaintiffs also assert it was procedurally improper on a motion to quash for the court to make factual determinations as to whether defendants made the allegedly defamatory statements within the scope of their official authority. Rather, they contend, any factual disputes should have been resolved by a jury or, at a minimum, by the court under a summary judgment standard. None of these points have merit.

We first address procedural contentions that it was improper for the court to make evidence-based factual determinations and that, at a minimum, the court should have assessed the evidence under a summary judgment standard. That is not the law.

Because sovereign immunity deprives a court of subject matter jurisdiction, California courts have authorized Indian tribes and their officials to specially appear and invoke their immunity from suit by using a "hybrid motion to quash/dismiss." (*Boisclair*

5

*v. Superior Court* (1990) 51 Cal.3d 1140, 1144, fn. 1; *Great Western Casinos, Inc. v. Morongo Band of Mission Indians* (1999) 74 Cal.App.4th 1407, 1418. (*Morongo Band*).) " 'Generally, in entertaining a motion to dismiss, the district court must accept the allegations of the complaint as true, and construe all inferences in the plaintiff's favor. [Citation.] *Where the motion to dismiss is based on a claim of . . . sovereign immunity, which provides protection from suit and not merely a defense to liability, however, the court must engage in sufficient pretrial factual and legal determinations to " 'satisfy itself of its authority to hear the case' before trial". . . .' . . .[W]hen a defendant challenges personal jurisdiction, the burden shifts to the plaintiff to prove the necessary jurisdictional criteria are met by competent evidence in affidavits and authenticated documentary evidence; allegations in an unverified complaint are inadequate." Morongo Band, supra,* 74 Cal.App.4th at pp. 1418, italics added, internal citations omitted; see *Smith v. Hopland Band of Pomo Indians* (2002) 95 Cal.App.4th 1, 7, fn. 8 ["when faced with a conflict on the question whether the defendants have waived their sovereign immunity, it is necessary and appropriate 'to go beyond the pleadings and contract language to consider the testimonial and documentary evidence' "].) In light of this specific authority, plaintiffs' reliance on cases that do not address tribal sovereign immunity is unavailing. (See *Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426; *R.E. Sanders & Co. v. Lincoln-Richardson Enterprises, Inc.* (1980) 108 Cal.App.3d 71; *Borsuk v. Appellate Division of the Superior Court.* (2015) 242 Cal.App.4th 607.) Tribal sovereign immunity may be decided in a hybrid motion to quash that takes into account factual assertions that bear on jurisdiction.

Plaintiffs' substantive argument is no more persuasive. They assert the court erred in finding the litigation barred by sovereign immunity because the complaint seeks damages only from the individual plaintiffs, not the Tribe, and because there is no allegation the allegedly defamatory statements were made on the Tribe's behalf. Plaintiffs assert that these points are determinative. Here, too, the law does not support their position.

6

*Maxwell v. County of San Diego* (9th Cir. 2013) 708 F.3d 1075 (*Maxwell*) states the relevant principles. The plaintiffs alleged that paramedics from a tribal fire department were grossly negligent in treating a gunshot victim, resulting in her death. (*Id*. at pp. 1081, 1087.) The Ninth Circuit adopted and applied a "remedy-focused analysis," rejecting more "categorical" tests under which sovereign immunity extends to tribal officials sued as individuals for acts done "in their official capacity and within the scope of their authority" or that involved a policy or discretionary function. (*Id*. at pp. 1087–1088.) "Tribal sovereign immunity derives from the same common law immunity principles that shape state and federal sovereign immunity. [Citations.] Normally, a suit like this one—brought against individual officers in their individual capacities—does not implicate sovereign immunity. [Citation.] The plaintiff seeks money damages 'not from the state treasury but from the officer[s] personally.' [Citation.] Due to 'the essential nature and effect' of the relief sought, the sovereign is not " 'the real, substantial party in interest.' " (*Ibid*.) Applying this " 'remedy sought' " test, the court held sovereign immunity did not apply because the lawsuit named the paramedics as individual defendants and sought monetary damages for their negligence that would "come from their own pockets, not the tribal treasury." (*Id*. at p. 1089.)

The Ninth Circuit clarified *Maxwell* in *Pistor v. Garcia* (9th Cir. 2015) 791 F.3d 1104 (*Pistor*). The plaintiffs in *Pistor*, "advantage" gamblers who employed legal techniques to limit their play to casino games that statistically favor the player, were detained and handcuffed at a tribal casino and their winnings were seized. The gamblers sued the tribal police chief, the tribal gaming office inspector and the casino's general manager in their individual capacities for violating plaintiffs Fourth and Fourteenth Amendment rights and under state tort law for battery, false imprisonment, conversion, defamation, trespass to chattels and negligence. (*Id*. at pp. 1108–1109.)

The Ninth Circuit applied *Maxwell*'s "remedy-focused" analysis and concluded, as in *Maxwell*, that sovereign immunity did not shield the defendants from suit. But the court also reinforced *Maxwell's* caveat that sovereign immunity will nonetheless apply in appropriate circumstances even though the complaint names and seeks damages only

7

from individual defendants. It explained: "In any suit against tribal officers, we must be sensitive to whether 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the [sovereign] from acting, or to compel it to act.' [¶] [Citations.] [¶] As examples of such suits, *Maxwell* pointed to *Cook,* 548 F.3d 718, and *Hardin v. White Mountain Apache Tribe,* 779 F.2d 476 (9th Cir.1985). [Citation.] . . . [In] *Hardin,* sovereign immunity barred the plaintiff from litigating a case against high-ranking tribal council members seeking to hold them individually liable for voting to eject the plaintiff from tribal land. To hold otherwise, we ruled, would interfere with the tribe's internal governance. [Citation.] '*Hardin* was in reality an official capacity suit,' barred by sovereign immunity, because the alternative, to "[h]old[ ] the defendants liable for their legislative functions[,] would . . . have attacked "the very core of tribal sovereignty." ' " (*Pistor, supra,* 791 F.3d at p. 1113; see *Kaw Nation ex rel. McCauley v. Lujan* (10th Cir. 2004) 378 F.3d 1139, 1143 [no subject matter jurisdiction over federal court action asserting tribal judges were appointed in violation of tribal law]; see also *Longie v. Spirit Lake Tribe* (8th Cir. 2005) 400 F.3d 586, 589 [no subject matter jurisdiction over intra-tribal dispute concerning alleged transfer of tribal land.)

Internal governance concerns were not implicated by the *Pistor* plaintiffs' allegations that tribal officials and employees allegedly detained and stole from them, so the court rejected the defendants' invocation of tribal sovereign immunity under "'the general rule that individual officers are liable when sued in their individual capacities.' [Citation.] So long as any remedy will operate against the officers individually, and not against the sovereign, there is 'no reason to give tribal officers broader sovereign immunity protections than state or federal officers.' " (*Pistor, supra,* 791 F.3d at p. 1113; accord, *Lewis v. Clarke* (2017) 137 S.Ct. 1285, 1289, __ U.S.__ [sovereign immunity of tribe does not on its own bar individual-capacity damages against tribal employees for torts committed within the scope of their employment].)

Here, plaintiffs contend their lawsuit falls under the remedy-focused general rule applied in *Maxwell*, *Pistor* and *Lewis*, and hence that the court erred in finding the action

barred by sovereign immunity. We disagree. The wrongs alleged in those cases were garden variety torts with no relationship to tribal governance and administration. In those circumstances, sovereign immunity does not shield individually named tribal officers or employees from state tort liability.

This case is different. As the trial court noted, *Maxwell* and *Pistor* make clear that the general rule is not dispositive if the lawsuit will encroach upon the tribe's sovereignty. (See *Maxwell, supra,* 708 F.3d at p. 1088.) Here, substantial evidence established that defendants were tribal officials at the time of the alleged defamation and that they were acting within the scope of their tribal authority when they determined that, for the reasons stated in the allegedly defamatory Order of Disenrollment, plaintiffs should be disenrolled from the Tribe pursuant to a validly enacted tribal ordinance. On this record, which we have carefully reviewed, the trial court concluded that plaintiffs sought to hold defendants liable for actions they took as tribal officials in pursuing plaintiffs' disenrollment from the Tribe on the basis of plaintiffs' alleged unlawful acts. The court further found that adjudicating the dispute would require the court to determine whether tribal law authorized defendants to publish the Order and disenroll plaintiffs, "which itself requires an impermissible analysis of Tribal law and constitutes a determination of a non-justiciable inter-tribal dispute."

We agree. " 'A tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community.' " (*Lamere v. Superior Court* (2005) 131 Cal.App.4th 1059, 1064 (*Lamere*), quotin*g Santa Clara Pueblo v. Martinez* (1978) 436 U.S. 49, 72, fn. 32.) It is thus not dispositive here that the complaint sought relief only from individual defendants. Despite the plaintiffs' careful pleading, their action sought to hold defendants liable for their legislative functions and is thus "in reality an official capacity suit" properly subject to sovereign immunity. (*Maxwell, supra,* 708 F.3d at p. 1089, citing *Hardin*, *supra*, 779 F.2d 476.)

While it may be true that, as plaintiffs assert, their suit does not ask the court to take any actions regarding their disenrollment, the action seeks to assess liability for torts tribal officials allegedly committed in effectuating that disenrollment. Notwithstanding

9

plaintiffs' assertion that their action is "purely about harmful publications" and "does not require a court to interfere with any membership or governance decisions," entertaining the suit would require the court to adjudicate the propriety of the manner in which tribal officials carried out an inherently tribal function. This is so whether or not, as plaintiffs assert (without reference to the record), some of the defendants are no longer members of the Tribe's governing body.

Finally, plaintiffs assert the trial court "had a duty to allow them to conduct discovery to assist in determining whether it had jurisdiction to proceed." They have supplied neither relevant authority nor cogent legal analysis to support this claim, so it is forfeited. In any event, plaintiffs fail even to suggest what relevant evidence such discovery might have produced. The court ruled correctly.

## DISPOSITON

The judgment is affirmed.

 

                                        _____

                                        Siggins, J.

We concur:

_____

McGuiness, P.J.

_____

Jenkins, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| ROSE BROWN et al.,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br> AUGUSTIN GARCIA et al.,<br><br>        Defendants and Respondents. | A150374<br><br>(Lake County<br>Super. Ct. No. CV415928)<br><br>**ORDER CERTIFYING OPINION<br>FOR PUBLICATION** |

**BY THE COURT:**

The opinion filed in the above-entitled matter on October 31, 2017, was not certified for publication in the Official Reports.  For good cause, the request for publication filed November 20, 2017, is granted.

Pursuant to rule 8.1105(b) of the California Rules of Court, the opinion in the above-entitled matter is ordered certified for publication in the Official Reports.

DATE: _____                                    _____P.J.

1

Trial Court:                                                                    Lake County Superior Court

Trial Judge:                                                              Honorable Richard C. Martin

Counsel:

Ceiba Legal, Little Fawn Boland for Plaintiffs and Appellants.

Duran Law Office, Jack Duran, Jr., Lyle D. Solomon for Defendants and Respondents.