Filed 11/29/21  Lopez v. Quaempts CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| CYNTHIA LOPEZ, | |
| Plaintiff and Appellant, | C087445 |
| v. | (Super. Ct. No. 34-2017-00206329-CU-FR-GDS) |
| ERIC QUAEMPTS et al., | |
| Defendants and Respondents. | |

Cynthia Lopez sued the Confederated Tribes of the Umatilla Indian Reservation, a federally recognized Indian tribe (the Tribe).  She also sued Eric Quaempts, the director of the Tribe's Department of Natural Resources (the Department), and David Tovey, the Tribe's executive director.  The lawsuit asserted claims arising from Lopez's recruitment, hiring and employment as program manager of the First Foods Policy Program.  The trial court granted defendants' motion to quash the service of, and to dismiss, the first amended complaint based on tribal sovereign immunity.

Lopez now contends (1) the Tribe waived its sovereign immunity and was amenable to suit because it ratified the conduct of Quaempts and Tovey that was outside the scope of their employment authority; (2) the Tribe's sovereign immunity did not protect Quaempts and Tovey from suit because they were sued in their individual capacities, and Lopez should now be allowed to further amend her complaint to focus her

1

allegations on claims against Quaempts and Tovey individually; (3) the trial court erred in finding that Lopez's exclusive remedy is in the Federal Tort Claims Act; and (4) Lopez was not required to exhaust any claims procedure within the Tribe's Tort Claims Code or Personnel Policies Manual.

We conclude (1) tribal sovereign immunity protects the Tribe from Lopez's suit, and (2) because the first amended complaint as pleaded asserts claims against Quaempts and Tovey in their official capacities, tribal sovereign immunity also protects them. Because the first amended complaint is barred, we need not address Lopez's other claims. We will affirm the trial court's order.

BACKGROUND

While Lopez was working and living in Sacramento, employees of the Tribe informed her of job openings with the Tribe and encouraged her to apply for a position. One of the positions was for program manager of the Tribe's First Foods Policy Program within the Department. The vacancy announcement said the goal of the Department was to protect, restore and enhance the "first foods" -- water, salmon, deer, cous, and huckleberry -- for the perpetual benefit of the Tribe.

Although the vacancy announcement described duties for the program manager position, Quaempts did not disclose that the program and position would be different from what was described in the vacancy announcement. Lopez would not have applied for the position had she known the vacancy announcement contained incorrect information, particularly about staffing and budget.

In reliance on the representations made to her, Lopez moved from Sacramento to Oregon and worked as the program manager. After completing probation, Lopez discovered that the budget for the First Foods Policy Program was not as stated in the vacancy announcement. She talked with Quaempts and Tovey about bringing the program's budget and staffing up to what was stated in the vacancy announcement, but Quaempts and Tovey did not make any changes. An attorney representing Lopez then

2

wrote Tovey and the Tribe's attorney, describing Lopez's claims of fraud and seeking an amicable resolution between Lopez and the Tribe.

Lopez subsequently took family medical leave for unrelated injuries. About three months later, the Tribe informed Lopez that if she would not accept a proposed separation agreement, she would need to report to work in six days with a letter from her treating physician clearing her to work. Lopez did not provide such a letter and the Tribe did not allow her to return to work.

Lopez filed her lawsuit, asserting causes of action for fraud, negligent misrepresentation, fraudulent misrepresentation, and unfair business practices. Her first amended complaint asserted the same causes of action. It alleged as follows: The vacancy announcement contained false information about the budget and staffing for the First Foods Policy Program, and Quaempts did not inform Lopez that the program manager position would be substantially different than advertised. Quaempts made false representations to Lopez about promotion opportunities and benefits. When Lopez asked to hire more staff, Quaempts said there was no budget for additional staff. He rebuffed Lopez's attempts to increase the budget for the First Foods Policy Program and retaliated against her when she complained that the staffing and budget for the program were not as represented during her recruitment. Tovey and the Tribe knew of and ratified Quaempts's conduct.

Specially appearing, defendants filed a motion to quash the service of, and to dismiss, the first amended complaint based on tribal sovereign immunity. The trial court granted the motion.

STANDARD OF REVIEW

Defendants' motion to quash and dismiss was made pursuant to Code of Civil Procedure section 418.10, subdivision (a)(1), which provides that a defendant may move to quash service of the summons based on lack of jurisdiction over the defendant. Tribal defendants may specially appear and invoke their immunity from suit by using a hybrid

3

motion to quash or dismiss.  (*Brown v. Garcia* (2017) 17 Cal.App.5th 1198, 1204 (*Brown*); *Great Western Casinos, Inc. v. Morongo Band of Mission Indians* (1999) 74 Cal.App.4th 1407, 1417-1418 (*Great Western Casinos, Inc.*).)  On such a motion, the trial court must engage in sufficient pretrial factual and legal determinations to " ' "satisfy itself of its authority to hear the case" before trial.' "  (*Brown,* at p. 1204, italics omitted; *Great Western Casinos, Inc.,* at p. 1418.)

" '[T]he plaintiff bears the burden of proving by a preponderance of the evidence that all jurisdictional criteria are met.  [Citations.]  The burden must be met by competent evidence in affidavits and authenticated documents; an unverified complaint may not be considered as supplying the necessary facts.'  [Citation.]  'In the absence of conflicting extrinsic evidence relevant to the issue, the question of whether a court has . . . jurisdiction over an action against an Indian tribe is a question of law subject to our de novo review.'  [Citation.]  But ' " '[w]hen the facts giving rise to jurisdiction are conflicting, the trial court's factual determinations are reviewed for substantial evidence.  [Citation.]  Even then, we review independently the trial court's conclusions as to the legal significance of the facts.' " ' [Citation.]  We [will] affirm a trial court's order if correct on any theory."  (*Brown, supra,* 17 Cal.App.5th at p. 1203; accord *People v. Miami Nation Enterprises* (2016) 2 Cal.5th 222, 242, 250 (*Miami Nation Enterprises*) [stating that typically, on a dismissal motion based on sovereign immunity, the plaintiff bears the burden of proving by a preponderance of evidence that jurisdiction exists, including that the tribe's immunity has been abrogated or waived].)

DISCUSSION

I

Lopez contends the Tribe waived its immunity from suit because it ratified the conduct of Quaempts and Tovey that were outside the scope of their employment authority.

4

Indian tribes are not amenable to suit brought by the states or individuals unless there is an unequivocal abrogation of tribal sovereign immunity by Congress or a clear waiver by the tribe. (*Michigan v. Bay Mills Indian Community* (2014) 572 U.S. 782, 788-790 [188 L.Ed.2d 1071] (*Michigan*); *C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe* (2001) 532 U.S. 411, 418 [149 L.Ed.2d 623] (*C & L Enterprises, Inc.*); *Santa Clara Pueblo v. Martinez* (1978) 436 U.S. 49, 58-59 [56 L.Ed.2d 106] (*Santa Clara Pueblo*); *Puyallup Tribe, Inc. v. Department of Game* (1977) 433 U.S. 165, 170-173 [53 L.Ed.2d 667].) As the United States Supreme Court has explained, "Indian tribes are ' "domestic dependent nations" ' that exercise 'inherent sovereign authority.' [Citation.] As dependents, the tribes are subject to plenary control by Congress. [Citation.] And yet they remain 'separate sovereigns pre-existing the Constitution.' [Citation.] Thus, unless and 'until Congress acts, the tribes retain' their historic sovereign authority. [Citation.] [¶] Among the core aspects of sovereignty that tribes possess -- subject, again, to congressional action -- is the 'common-law immunity from suit traditionally enjoyed by sovereign powers.' [Citation.] That immunity, we have explained, is 'a necessary corollary to Indian sovereignty and self-governance.' [Citations.] And the qualified nature of Indian sovereignty modifies that principle only by placing a tribe's immunity, like its other governmental powers and attributes, in Congress's hands." (*Michigan,* at pp. 788-789.)

"[T]ribal immunity is intended to promote the federal policy of tribal self-governance, which includes economic self-sufficiency, cultural autonomy, and the tribe's 'ability to govern itself according to its own laws.' " (*Miami Nation Enterprises, supra*, 2 Cal.5th at p. 245.) " '[S]overeign immunity is not a discretionary doctrine that may be applied as a remedy depending on the equities of a given situation. [Citation.]' [Citation.] Rather, it presents a pure jurisdictional question." (*Warburton/Buttner v. Superior Court* (2002) 103 Cal.App.4th 1170, 1182; see *Miami Nation Enterprises,* at pp. 243-244.) Moreover, sovereign immunity " 'is a matter of federal law and is not

5

subject to diminution by the States.' " (*Michigan, supra*, 572 U.S. at p. 789; see *Kiowa Tribe v. Manufacturing Technologies* (1998) 523 U.S. 751, 754-755, 758 [140 L.Ed.2d 981] (*Kiowa Tribe*).)

The United States Supreme Court has applied tribal sovereign immunity to activities occurring on and off the reservation and to governmental and commercial activities. (*Michigan, supra*, 572 U.S. at pp. 797-800; *Kiowa Tribe, supra,* 523 U.S. at pp. 754-755, 758; see also *Sac & Fox Nation v. Hanson* (10th Cir. 1995) 47 F.3d 1061, 1064-1065; *In re Greene* (9th Cir. 1992) 980 F.2d 590, 591, 596-597; *Ameriloan v. Superior Court* (2008) 169 Cal.App.4th 81, 84-85, 89 (*Ameriloan*).) And courts have applied tribal sovereign immunity in the employment context. (See, e.g., *Pink v. Modoc Indian Health Project* (9th Cir. 1998) 157 F.3d 1185; *Tenney v. Iowa Tribe of Kansas* (D. Kan. 2003) 243 F.Supp.2d 1196; *Barker v. Menominee Nation Casino* (E.D. Wis. 1995) 897 F.Supp. 389.)

Lopez does not point to any applicable Congressional authorization for her lawsuit. She argues instead that by ratifying Quaempts and Tovey's actions, the Tribe adopted the conduct as its own, necessarily accepted any liability that arose from that conduct, and thereby expressly waived sovereign immunity.

However, Lopez does not cite to a portion of the record supporting her assertion that the Tribe expressly ratified misconduct by Quaempts and Tovey that was outside the scope of their employment authority. We do not consider factual assertions made without citation to the record. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247; *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239-1240.) Although the Tribe's attorney agreed that the Tribe ratified the acts of recruiting, hiring and interviewing Lopez, including the creation and posting of the job description, the Tribe did not stipulate that Quaempts or Tovey committed illegal or improper conduct outside the scope of their employment authority.

6

In any event, a waiver of tribal sovereign immunity cannot be implied but must be explicit and unequivocally expressed. (*Santa Clara Pueblo, supra,* 436 U.S. at pp. 58-59; *C & L Enterprises, Inc., supra,* 532 U.S. at p. 418; *Maxwell v. County of San Diego* (9th Cir. 2013) 708 F.3d 1075, 1087 (*Maxwell*); *Allen v. Gold Country Casino* (9th Cir. 2006) 464 F.3d 1044, 1047; *McClendon v. United States* (9th Cir. 1989) 885 F.2d 627, 629 (*McClendon*); *Lawrence v. Barona Valley Ranch Resort & Casino* (2007) 153 Cal.App.4th 1364, 1369.) Waivers are strictly construed and there is a strong presumption against them. (*Ameriloan, supra,* 169 Cal.App.4th at p. 94.) Lopez fails to show that the Tribe unequivocally and clearly waived its sovereign immunity from suit in this case.

Under the circumstances, the trial court did not err in concluding that the Tribe was immune from Lopez's suit. Because the Tribe was entitled to immunity from suit, the trial court lacked jurisdiction over the claims against the Tribe and was required to dismiss it from the action. (*Pistor v. Garcia* (9th Cir. 2015) 791 F.3d 1104, 1111 (*Pistor*); *McClendon, supra,* 885 F.2d at p. 629.)

II

Lopez further argues the Tribe's sovereign immunity did not protect Quaempts and Tovey from suit because they were sued in their individual capacities.

A

Tribal sovereign immunity protects tribal employees sued in their official capacities. (*Lewis v. Clarke* (2017) _ U.S. _ [197 L.Ed.2d 631] [137 S.Ct. 1285, 1294] (*Lewis*).) The analysis for determining whether a tribe's sovereign immunity protects a tribal employee is remedy-focused. (*Id.* at pp. 1290-1292.)

In *Lewis,* the plaintiffs brought a negligence action in state court against the driver of a limousine that hit their vehicle on a state interstate. (*Lewis, supra,* 137 S.Ct. at p. 1289.) The defendant was an employee of an arm of the Mohegan Tribe of Indians of Connecticut and the collision occurred while the defendant was driving patrons of the

7

Mohegan Sun Casino. (*Id.* at pp. 1289-1290.) The plaintiffs sued the defendant personally and did not name the tribe as a defendant. (*Ibid.*) The defendant moved to dismiss the action based on tribal sovereign immunity, arguing that he was entitled to immunity because he was an employee of an arm of an Indian tribe, acting within the scope of his employment at the time of the collision. (*Id.* at p. 1290.) The United States Supreme Court explained that defendants in an official-capacity action may assert sovereign immunity, whereas defendants in an individual-capacity action may not, although personal immunity defenses may apply. (*Id.* at pp. 1291-1292.) Because the plaintiff's lawsuit in *Lewis* was a negligence action against the tribal employee and not a suit against the employee in his official capacity, the Court concluded that a judgment in that action would not operate against the tribe nor require action by the tribe or disturb its property. (*Id.* at pp. 1290-1291.) It held that tribal sovereign immunity did not bar the plaintiff's lawsuit because the employee, and not his tribal employer, was the real party in interest. (*Id.* at pp. 1290-1293 [stating that the critical inquiry was who may be legally bound by the trial court's judgment and not who will ultimately pick up the tab].)

The Ninth Circuit Court of Appeals has likewise held that tribal sovereign immunity does not extend to a tribal employee sued in his or her individual capacity. (*Pistor, supra*, 791 F.3d at pp. 1110, 1112-1114; *Maxwell, supra*, 708 F.3d at pp. 1087-1089.) In *Pistor*, for example, gamblers sued the chief of the Tonto Apache Police Department, the general manager of the Tonto Apache Tribe's hotel and casino and the Tribal Gaming Office Inspector for damages relating to the detention of the gamblers at the tribe's casino and the seizure of their property. (*Pistor*, at pp. 1108-1109.) On appeal from an order denying the tribal defendants' motion to dismiss based on tribal sovereign immunity, the Ninth Circuit held that tribal sovereign immunity did not bar the suit because the plaintiffs sought to hold the tribal defendants liable in their individual capacities and did not seek money damages from the tribe, and the tribal defendants did not show that a judgment would interfere with tribal administration or restrain the tribe

8

from acting.  (*Id.* at pp. 1108, 1113-1114; see *Maxwell,* at p. 1088; see also *Native American Distributing v. Seneca-Cayuga Tobacco Co.* (10th Cir. 2008) 546 F.3d 1288, 1296-1297 [acknowledging that tribal officials may be sued in their individual capacities for actions taken in their official capacities where the relief sought was from the officials personally and not from the sovereign].)  The Ninth Circuit noted that the gamblers had not sued the tribe.  (*Pistor,* at p. 1113.)

By contrast, the Ninth Circuit has extended tribal sovereign immunity to tribal employees where the plaintiff sought to hold the tribe or a tribal entity vicariously liable for the actions of the employees.  (*Cook v. AVI Casino Enterprises* (9th Cir, 2008) 548 F.3d 718, 720, 726-727 (*Cook*); *Linneen v. Gila River Indian Community* (9th Cir. 2002) 276 F.3d 489, 492; *Hardin v. White Mountain Apache Tribe* (9th Cir. 1985) 779 F.2d 476, 479-480.)

Although the caption of the first amended complaint named Quaempts and Tovey as individuals, we may not simply rely on the caption but must determine whether the action against Quaempts and Tovey actually sought relief against the Tribe.  (*Lewis, supra*, 137 S.Ct. at p. 1290.)  The first amended complaint alleged that Quaempts committed wrongful acts against Lopez while he was employed as the director of the Department.  And Tovey failed to act or acted improperly as to Lopez while Tovey was employed as the Tribe's executive director.  Lopez's declaration in opposition to defendants' motion to quash and dismiss described acts or omissions by Quaempts in interviewing Lopez, discussing her potential employment with the Tribe, and responding to her concerns about staffing and budget when she was the program manager.  Lopez averred that her attorney unsuccessfully attempted to negotiate on her behalf with the Tribe and her only option was to obtain relief in state court.  Lopez did not discuss in her declaration any attempt to obtain monetary relief from Quaempts or Tovey personally.  Neither the first amended complaint nor Lopez's declaration stated that as to Quaempts and Tovey, Lopez sought a judgment against those defendants personally.  (Cf. *JW*

9

*Gaming Development v. James* (9th Cir. 2019) 778 Fed.Appx. 545, 545-546 [claims against individual tribal defendants were not shielded by the tribe's sovereign immunity because the claims were explicitly alleged against the tribal defendants in their individual capacities and if the plaintiff prevailed on its claims against the tribal defendants, only they personally and not the tribe would be bound by the judgment].)  Lopez's opposition to defendants' motion to quash and dismiss also did not make such an assertion.  Rather, unlike the circumstances in *Lewis*, the first amended complaint named the Tribe as a defendant and sought to hold the Tribe vicariously liable for the conduct of its employees Quaempts and Tovey, whose alleged acts or omissions in the course of recruiting, hiring and supervising Lopez, another tribal employee, formed the grounds for Lopez's causes of action.[1]  (See generally *Miller v. Stouffer* (1992) 9 Cal.App.4th 70, 84 [explaining that under the doctrine of respondeat superior, the employee's negligence is imputed to her employer; thus, the employer stands in the employee's shoes and the entire liability of the two defendants is co-extensive].)  In fact, the cause of action for fraudulent misrepresentation in violation of Labor Code section 970 was based on defendants' alleged status as employers.

The Tribe was the real party in interest in the first amended complaint against Quaempts and Tovey.  (See *Cook, supra*, 548 F.3d at pp. 721, 726-727; *Imperial Granite Co. v. Pala Band of Mission Indians* (9th Cir. 1991) 940 F.2d 1269, 1270-1272; *Romanella v. Hayward* (D.Conn. 1996) 933 F.Supp. 163, 164-165, 167-168; cf. *Lewis v. Clarke* (Conn. Super. Ct. Sept. 10, 2014) 2014 WL 5354956, at *1, 4 [2014 Conn. Super. LEXIS 2314]; *Pistor, supra*, 791 F.3d at pp. 1108, 1113; *Maxwell, supra,* 708 F.3d at pp. 1081, 1089.)  We conclude the first amended complaint sued Quaempts and Tovey in their representative or official capacities and not their individual capacities.

---

[1] Lopez's appellate reply brief also makes clear that she seeks to hold the Tribe liable for Quaempts and Tovey's conduct under the ratification doctrine.

In considering Quaempts and Tovey's assertion that the Tribe's sovereign immunity extended to them, we also consider whether Lopez showed that Quaempts and Tovey exceeded the scope of their official authority. (See *Brown, supra*, 17 Cal.App.5th at pp. 1206-1207; *Redding Rancheria v. Superior Court* (2001) 88 Cal.App.4th 384, 390; *Great Western Casinos, Inc., supra*, 74 Cal.App.4th at p. 1421; *Trudgeon v. Fantasy Springs Casino* (1999) 71 Cal.App.4th 632, 643-644 (*Trudgeon*); *Davis v. Littell* (9th Cir. 1968) 398 F.2d 83, 83-85; *Acres Bonusing, Inc. v. Marston* (N.D. Cal. Apr. 15, 2020) 2020 WL 1877711, at *4 [2020 U.S. Dist. LEXIS 66438].) The agent of a sovereign may be sued in his or her personal capacity when his or her actions exceed the authority granted by the sovereign. (*Larson v. Domestic & Foreign Commerce Corp.* (1949) 337 U.S. 682, 689-690 (*Larson*); *Boisclair v. Superior Court* (1990) 51 Cal.3d 1140, 1157 (*Boisclair*).) Under such circumstances the agent's conduct is not the conduct of the sovereign. (*Larson,* at p. 690.) But a claim of error in the exercise of delegated power or the mere allegation that the agent acted illegally is not sufficient to establish that the acts of the agent were beyond his or her authority. (*Id.* at pp. 690-691, 693.)

The first amended complaint alleged that Quaempts and Tovey acted within the scope of their employment but outside the scope of their authority. But it did not specify which acts were beyond the scope of their authority. Lopez's declaration in opposition to defendants' motion did not aver any facts indicating that Quaempts or Tovey exceeded the scope of their authority as Department director and executive director. An agent's tortious action is not ipso facto beyond his or her delegated powers. (*Larson, supra*, 337 U.S. at p. 695; *Boisclair, supra*, 51 Cal.3d at p. 1157; *Brown, supra*, 17 Cal.App.5th at pp. 1200, 1206-1207; *Trudgeon, supra*, 71 Cal.App.4th at p. 644.)

Lopez asserts that her claims have no relationship to tribal governance and administration, but we disagree. An action challenging the employment decisions of a tribe can affect tribal governance and administration (*EEOC v. Karuk Tribe Housing Authority* (9th Cir. 2001) 260 F.3d 1071, 1080-1082; *Penobscot Nation v. Fellencer* (1st

11

Cir. 1999) 164 F.3d 706, 707, 710-713; see also *Dille v. Council of Energy Resource Tribes* (10th Cir. 1986) 801 F.2d 373, 374-375), and here, Lopez's claims involve the administration of the Department and the First Foods Policy Program.

On appeal, Lopez urges that Quaempts and Tovey exceeded the scope of their authority by violating the Tribe's Personnel Policies Manual when they committed false advertising. However, the first amended complaint does not contain such an allegation. Lopez also argues that the Tribe's ratification of Quaempts and Tovey's actions did not extend tribal sovereign immunity to Quaempts and Tovey. But Quaempts and Tovey's immunity claim was based on tribal sovereign immunity and not ratification. Lopez further contends that federal courts presume that officials are sued in their personal capacities even if the complaint does not explicitly mention the capacity in which they are sued. But the authority she cites for that proposition -- *Romano v. Bible* (9th Cir. 1999) 169 F.3d 1182 -- relates to a claim under 42 U.S.C. section 1983, which authorizes an action against any person who, acting under color of state law, causes another to be deprived of rights, privileges or immunities secured by the Constitution and laws. This case does not involve a section 1983 claim.

The trial court did not err in ruling that as pleaded, the first amended complaint asserted claims against Quaempts and Tovey in their official capacities. Because the first amended complaint against Quaempts and Tovey was an official capacity suit and did not seek damages against Quaempts and Tovey personally, tribal sovereign immunity bars Lopez's first amended complaint against them.

B

Lopez next asserts that she should be allowed to further amend her pleading to focus her allegations on claims against Quaempts and Tovey individually.

A trial court may, in its discretion, after notice to the adverse party, allow, upon any terms as may be just, an amendment to any pleading. (Code Civ. Proc., § 473, subd. (a).) However, no amendment can be made after a judgment of dismissal has been

12

entered without first vacating or setting aside the judgment. (*Watterson v. Owens River Canal Co.* (1922) 190 Cal. 88, 96; *People ex rel. Hastings v. Jackson* (1864) 24 Cal. 630, 633; *Risco v. Reuss* (1941) 45 Cal.App.2d 243, 245; *Issa v. Alzammar* (1995) 38 Cal.App.4th Supp. 1, 4.) Here, we affirm the order dismissing the complaint against the Tribe, Quaempts and Tovey, and there is no complaint to amend. Lopez fails to cite any authority that supports her request to further amend her pleading after an order dismissing the amended complaint is affirmed. In *Turner v. Martire* (2000) 82 Cal.App.4th 1042, the case Lopez cites, the order quashing service and dismissing the action based on tribal sovereign immunity was reversed. (*Id.* at pp. 1044-1045.)

Because tribal sovereign immunity bars the suit against defendants, we need not address Lopez's other appellate claims.

### DISPOSITION

The order quashing the service of, and dismissing, Lopez's first amended complaint is affirmed. Respondents shall recover their costs on appeal. (Cal. Rules of Court, 8.278(a)(1), (2).)


       /S/
     MAURO, J.


We concur:


   /S/
ROBIE, Acting P. J.


   /S/
HOCH, J.


13