Filed 7/17/24  Alford v. Novak CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| PAUL MARK ALFORD,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>KORI NOVAK,<br><br>    Defendant and Respondent. | D083782<br><br><br><br>(Super. Ct. No.<br>ICSICVCV202065082) |


APPEAL from a judgment of the Superior Court of Inyo County, Susanne Rizo, Judge.  Reversed.

Law Offices of James R. Greiner and James R. Greiner for Plaintiff and Appellant.

Bona Law, Kristen Harris, Luke Hasskamp, and Jarod M. Bona for Defendant and Respondent.

Paul Mark Alford appeals from a judgment following an order granting Kori Novak's motion for summary judgment.  He contends the trial court

erred in finding that tribal sovereign immunity insulated Novak from liability.  We agree.  Hence we reverse the judgment.[1]

# I.
# Background

This case arises in the context of a contentious relationship between two (now former) officers of a health care provider known as Toiyabe Indian Health Project (Toiyabe).  One of these two officers, Novak, served for several years as Toiyabe's chief *executive* officer (CEO).  The other, Alford, served as the organization's chief *operations* officer (COO)—until Novak terminated his employment, several months after it had begun.

Alford sought and was awarded relief in a tribal forum in connection with the termination of his employment.[2]  In addition, he filed a superior court complaint, against Novak and Toiyabe's chief financial officer (CFO), alleging defamation and tortious interference with contract.  Novak and the CFO filed a series of three demurrers that resulted in the case being whittled down to a single claim, defamation, being asserted against a single defendant, Novak, in what is now Alford's operative pleading:  the verified second amended complaint (the complaint).

---

[1]    No judgment appears in the record; however, for reasons set forth in our order of April 23, 2024, we construe the order granting summary judgment as incorporating an appealable judgment.

[2]    The record does not reveal the identit(ies) of the part(ies) against whom Alford sought relief in the tribal forum.  Nor does it reveal the nature of the relief awarded there, or the part(ies) against whom it was awarded.

## A. The Facts as Alleged in the Complaint

According to the allegations in the complaint,[3] Novak made a number of statements to Toiyabe personnel that were false, malicious, unprivileged, and injurious to Alford. By way of example, Novak told the CFO that Alford "was interested" in her, that she had rebuffed him, and that their working relationship had "soured" as a result. She told others that he had accessed her personal medical records in violation of HIPAA, had harassed her, was misappropriating Toiyabe funds, "was taking excess travel . . . and . . . time off and failing to record these activities on the books," and was "unethical." She also stated "in several loud public conversations" that Alford " 'is incapable to lead and inept to lead as . . . COO.' " Each of these statements was "100% false, and malicious."

The locations in which Novak made such statements included, not only offices and a conference room in Toiyabe's administration building, but also a break room, hallways, and "common areas, public areas and other non-private areas." Among the persons who heard Novak make such statements were: the CFO, the compliance officer, a clinic manager, and a pharmacist. Novak also instructed several Toiyabe staff to make false allegations against Alford and stated: " 'I'm the Damn CEO.' " " 'I can do whatever I want.' " " '[T]his HIPAA complaint is going to do [Alford] in.' "

## B. The Tribal Sovereign Immunity Defense, the Demurrers, and the Motion for Summary Judgment

As noted *ante*, Novak filed three demurrers. In its orders resolving the demurrers, the trial court repeatedly deferred ruling on an argument by Novak that the case should be dismissed based on tribal sovereign immunity.

---

[3] Each statement appearing in this section of our opinion is drawn from the complaint. We make no findings as to such statements' truth or falsity.

3

In her answer to the complaint, Novak pleaded tribal sovereign immunity as an affirmative defense; and, 21 months later, she filed a motion for summary judgment in which she identified as the only matters for resolution: "Issue 1: Whether the Toiyabe Indian Health Center is Entitled to [Tribal] Sovereign Immunity?" and "Issue 2: Whether Defendant . . . Novak is Entitled to Tribal [Sovereign] Immunity as an Officer of the Toiyabe Indian Health Center?"

The trial court heard and granted the motion, and Alford timely appealed.

## II.
## Discussion

On appeal, Alford does not dispute that tribal sovereign immunity applies to Toiyabe. But he contends it does *not* apply to Novak. Novak disagrees, contending that, "The trial court correctly dismissed Mr. Alford's lawsuit under tribal sovereign immunity because it [the lawsuit] implicates or could interfere with tribal governance or administration: the tribal entity's ability to manage internal personnel decisions, terminate underperforming employees, and communicate those decisions to other employees and tribal officials."

In debating the applicability of tribal sovereign immunity, the parties focus substantial attention on a split of authority with respect to the continuing vitality or the demise of the principal expressed in *Maxwell v. County of San Diego* (9th Cir. 2013) 708 F.3d 1075 (*Maxwell*) that, "[i]n any suit against tribal officers, we must be sensitive to whether 'the judgment sought would . . . interfere with the . . . administration' " of tribal affairs.[4]

---

[4] The above-quoted passage from *Maxwell* is traceable to the opinion of the United States Supreme Court in *Land v. Dollar* (1947) 339 U.S. 731, 738 (*Land*).

4

(*Maxwell,* at p. 1088; see also *Pistor v. Garcia* (9th Cir. 2015) 791 F.3d 1104, 1113.)  The role that such potential interference should play, as a matter of law, is an important topic.  But it is a topic that we need not address, because we conclude Novak has not met her burden of proof as to matters of *fact*.

## A.    Burden of Proof and Standard of Review

When reviewing an order granting a motion for summary judgment, we examine the record de novo, strictly construing the moving party's evidence, and resolving evidentiary doubts in favor of the party against whom the order was entered.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*); *Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460; *Blaylock v. DMP 250 Newport Center, LLC* (2023) 92 Cal.App.5th 863, 869–870.)

"[T]he party moving for summary judgment bears [the] initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact."  (*Aguilar, supra,* 25 Cal.4th at p. 850.)  "A prima facie

---

In debating the passage's continuing vitality versus demise, both parties refer extensively to the high court's opinion in *Lewis v. Clarke* (2017) 581 U.S. 156 (*Lewis*), and each party argues its preferred branch of a split of authority that has developed in that opinion's wake.  Thus, for example, Alford emphasizes and relies upon *Acres Bonusing, Inc. v. Marston* (9th Cir. 2021) 17 F.4th 901, 911-914 (*Acres Bonusing*) (rejecting principle that the effect a judgment sought would have on the administration of tribal affairs is a matter to be considered in evaluating a tribal sovereign immunity defense) and *Acres v. Marston* (2021) 72 Cal.App.5th 417, 437-439, and Novak emphasizes and relies upon *Brown v. Garcia* (2017) 17 Cal.App.5th 1198, 1205-1207 (finding tribal sovereign immunity applies due to effect the judgment sought would have on administration of tribal affairs).  (Cf. *Acres Bonusing*, 17 F.4th at p. 918 (conc. opn. of Feinerman, J.) [criticizing *Acres Bonusing* majority for "[d]iminishing or excising," and "leav[ing] no room for independent operation of," the principle that consideration must be given to whether a judgment sought would interfere with the administration of tribal affairs, and for "effectively suggest[ing] . . . [that principle] is a dead letter"]).

showing is one that is sufficient to support the position of the party in question." (*Id.* at p. 851.) Among the ways in which a defendant may satisfy that initial burden is by producing evidence of a complete defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 853.) If the defendant satisfies this initial burden—say, for example, by making a sufficient showing that there is no triable issue of material fact regarding the existence of a complete defense, such as tribal sovereign immunity—then the burden shifts to the plaintiff to show that a triable issue of material fact *does* exist regarding the existence of that defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 850.) But, if the defendant does *not* meet her initial burden of production, then the burden does not shift from the defendant to the plaintiff. In that situation, the plaintiff need not adduce *any* evidence, and the motion must be denied.

**B.   Analysis**

In this case, Novak sought to meet her burden of production by adducing two types of evidence in support of her position that tribal sovereign immunity furnishes her with a complete defense: (1) testimony to support her contention that Toiyabe is entitled to tribal sovereign immunity;[5] and (2) testimony to support her contention that *she* is entitled to tribal sovereign immunity as an *officer* of Toiyabe. (See *ante*.) The first of these two types of evidence is not in issue on appeal, because Alford disavows the position that Toiyabe is without tribal sovereign immunity. (See *ante*.) But the second

---

[5]    This evidence consisted of: a declaration by the California Rural Indian Health Board's former executive director bearing on ways in which (unspecified) tribal health care programs receive funding, training, and other forms of assistance, and on how such programs have evolved over time; and declarations by Novak, the CFO, and the chairman of Toiyabe's board of directors bearing on Toiyabe specifically, including, for example: its purpose, its creation and growth over the years, the services it provides, the communities and clientele it serves, the locations of its clinics, and attributes of its governance, funding, and finances.

type of evidence—that bearing on whether tribal sovereign immunity extends to *Novak*—*is* in issue.

Insofar as this second type of evidence is concerned, Novak's showing in support of her motion consisted of ten sentences in a declaration, by her, the sum and substance of which were:

- That, in her role as CEO, Novak had "participated in and was responsible for the hiring and termination of . . . Alford" and "for communicating the details of his termination to the Toiyabe Board of Directors and Toiyabe personnel";

- that "[i]t was necessary to communicate information about . . . Alford's termination to Toiyabe's Board of Directors and Toiyabe personnel to ensure the effective administration of Toiyabe's operations, including areas for which . . . Alford had been responsible"; and

- that, "[b]efore . . . Alford's filing of this lawsuit, I did not discuss his termination with anyone who was *not* a member of Toiyabe's Board of Directors or a Toiyabe employee."[6]

Novak produced this evidence in support of the fundamental premise of her tribal sovereign immunity defense—i.e, the premise that tribal sovereign immunity shields her from liability for the statements she made about Alford, because those statements were made in the course and scope of her role as

---

[6] Alford neither disputed nor objected to any of Novak's evidence. But he did not need to, because (as discussed *post*) that evidence did not satisfy the burden of production for Novak's tribal sovereign immunity defense. (Alford did submit evidence of his own (declarations from a former Toiyabe compliance director, a former Toiyabe information technology director, and Alford himself) that was generally in keeping with the allegations in the complaint; but, because Novak did not satisfy her burden of production, Alford's evidence was unnecessary.)

7

CEO of Toiyabe and thus were indispensable to the administration of tribal affairs.[7]

But missing from Novak's submission to the trial court is any evidence to *substantiate* the contention that it was in the course and scope of her role as CEO that she made the remarks she is alleged to have made about Alford. Indeed, nowhere in that submission is there any evidence from which a reader may discern what she is alleged to have said or the circumstances in which she is alleged to have said it. In other words, there is no quotation, paraphrase, or description of any statement she is alleged to have made, and there is no (non-conclusory) indication as to the circumstances attending the making of such a statement—such as, for example: why, where, through what means, to whom, and in whose presence or earshot the statement was made.

Distilled to its essence, the evidence produced regarding whether tribal sovereign immunity of Toiyabe extends to Novak consisted of nothing more than testimony (1) that it was Novak's responsibility as CEO to make decisions about terminating Alford's employment and to communicate information about Alford's termination to Toiyabe's Board of Directors and

---

[7]  For purposes of this appeal, we assume without deciding that Novak's position as Toiyabe CEO qualified her as a tribal officer within the meaning of case law bearing on tribal sovereign immunity. So too do we assume, based on Alford's concession and without deciding the matter, that Toiyabe qualified as a tribal entity within the meaning of such case law.

personnel, and (2) that she fulfilled that responsibility.[8]  But, even accepting these assertions as true, it does not follow that *whatever* information Novak communicated to Toiyabe's directors or its personnel was within the course and scope of her role as CEO.  (Cf. *Grand Canyon Skywalk Development, LLC v. Ciestak* (2015) 2015 WL 3551305, *3-5 [tribal sovereign immunity unavailable absent showing that, in engaging in challenged conduct, tribal officer was acting in representative capacity and within scope of tribal authority; discussing case law]; *United States v. Yakima Tribal Court* (9th Cir. 1986) 806 F.2d 853, 859 ["[i]f an employee of the [sovereign] acts completely outside his governmental authority, he has no immunity"]; *Puyallup Tribe, Inc. v. Department of Game of State of Washington* (1977) 433 U.S. 165, 168, fn. 3, 173 [tribal sovereign immunity unavailable to tribal officers acting in private capacity as fishermen, instead of in public roles administering tribal affairs].)

Were we to conclude otherwise, we in effect would be deciding that, no matter what Novak said about Alford, no matter who she said it to, no matter where she said it, and no matter who she had reason to know was in earshot, it must be construed as having been in the course and scope of her role as CEO because that role encompassed personnel matters and personnel matters are essential to the administration of tribal affairs.  Or stated differently, we would be ruling that, because Novak was vested with

_____

[8]  As noted *ante*, Novak also stated in her declaration that "[b]efore . . . this lawsuit, I did not discuss [Alford's] termination with anyone who was not a member of Toiyabe's Board of Directors or a Toiyabe employee."  But to say that she limited her discussions about Alford's *termination* to just those individuals is not to say that she limited her discussions about her disapproval of Alford to just those individuals.  Nor is to say there was a legitimate business purpose for each such individual to hear from her about whatever topics are encompassed within her understanding of the phrase "[Alford's] termination."

9

authority to handle personnel matters, she was at liberty to say anything—no matter how false, unprivileged, defamatory, or injurious[9]—about any Toiyabe employee or former employee to any of some 134 individuals[10] associated with Toiyabe. By this reasoning, the immunity of the sovereign would insulate Novak from liability even if she had gratuitously smeared Alford with deliberately false, defamatory, unprivileged, and injurious remarks that had nothing to do with his actual job performance or character.

We hasten to add there was no evidence of any such remarks here. But that is precisely the point: There was no evidence in Novak's submission to the trial court of any statements *at all*. Novak had many months in which to engage in discovery to identify the universe of statements she was being alleged to have made, and to elicit testimony and documents bearing on whether, why, where, through what means, to whom, and in whose presence or earshot such statements had been made. Presuming she had engaged in such discovery, she could have catalogued the alleged statements and proffered evidence, as to each such alleged statement, indicating either that it had not been made or that the circumstances in which it *had* been made harmonized with Novak's role as CEO.

Because she has not tethered the premise of her motion to such evidence, Novak has left open the possibility that some or all of her remarks

---

9    " ' " 'The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage.' " ' " (*Hoang v. Tran* (2021) 60 Cal.App.5th 513, 531–532.)

10    Novak stated in her declaration that, "[d]uring [her] time, Toiyabe had more than 120 employees"; and the chairman of Toiyabe's board of directors stated in his declaration that "Toiyabe is governed and controlled by a fourteen member Board of Directors."

about Alford were gratuitous smears not in furtherance of the mission of Toiyabe.[11] Hence she has not carried her "initial burden of production to make a prima facie showing of the nonexistence of [a] triable issue of material fact" (*Aguilar, supra,* 25 Cal.4th at p. 850) regarding her tribal sovereign immunity defense.[12]

---

[11] In her brief Novak points out, correctly, that "Mr. Alford offered no evidence that anyone other than Toiyabe employees and tribal officials heard the allegedly defamatory statements." But this observation is inapposite inasmuch as the failure on the part of Novak to satisfy the burden of producing evidence identifying the remarks alleged against her and tending to demonstrate that those remarks had indeed been in the course and scope of her role as CEO resulted in the burden not shifting to Alford.

Novak also argues that: "Simply insisting that a tribal entity's termination of an employee and the CEO's communications with employees, board members, and tribal officials about his termination are unrelated to tribal governance does not make it so." But the inverse is equally true, and more pertinent: Simply insisting that Toiyabe's termination of Alford and Novak's communications with employees, board members, and tribal officials about his termination *are* related to tribal governance does not make it so.

[12] This is not to say that Novak will be unable to establish a tribal sovereign immunity defense at trial. (Cf. *Larson v. Domestic & Foreign Commerce Corp.* (1949) 337 U.S. 682, 690 [noting in context of sovereign immunity defense that "jurisdiction of the court to hear the case may depend . . . upon the decision . . . it ultimately reaches on the merits"]; *Land, supra,* 339 U.S. at p. 739 [holding, in situation in which evidence needed to evaluate sovereign immunity defense had not been presented and in which such evidence partially overlapped with evidence as to the merits of plaintiffs' claims, that trial court "has jurisdiction to determine its jurisdiction by proceeding to a decision on the merits"].) We express no view regarding whether Novak will succeed at trial in establishing a tribal sovereign immunity defense. Nor do we express any view regarding whether Alford will succeed at trial in establishing defamation.

### III.
### Disposition

The judgment is reversed.  Alford is entitled to costs on appeal.


KELETY, J.


WE CONCUR:


DATO, Acting P. J.


BUCHANAN, J.